Filed 3/21/13  P. v. Leon CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C071886 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF03-243) |
| v. | |
| BENNY LEON, JR., | |
| Defendant and Appellant. | |

After the United States Court of Appeals for the Ninth Circuit ruled that defendant Benny Leon, Jr.'s, 11-year upper term state prison sentence for voluntary manslaughter had resulted from prejudicial *Blakely* error (*Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403]), the trial court modified the sentence from 11 years to the middle term of six years.  We concluded the trial court erred in believing the federal courts had curtailed its discretion to reimpose an upper term, and remanded for resentencing.  On remand, the trial court imposed the upper term of 11 years.  Defendant appeals, contending the trial court abused its discretion because it relied upon reasons that are

1

"legally improper" and/or not supported by substantial evidence. Defendant also contends the court erred on resentencing in failing to calculate the total number of days in custody. Only the latter contention has merit. We shall remand for this amendment and affirm as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

Our statement of facts is taken from both our opinion in the direct appeal, case No. C047003 (*People v. Leon* (Aug. 11, 2005, C047003) [nonpub. opn.]), and our prior opinion on resentencing, case No. C068005 (*People v. Leon* (Apr. 5, 2012, C068005) [nonpub. opn.]).

Defendant and the victim, Rosalie Reyes, lived together in a Marysville apartment at the time of the offense. On the evening of April 2, 2003, their acquaintance, Antonio L., accompanied them to a home on Highway 113. While there, Antonio overheard Reyes tell defendant something about money he had borrowed from her. Defendant left. Ten minutes later, defendant telephoned Antonio and informed him that defendant would not be able to return to pick them up because "some group of gangbangers confronted him about something."

Approximately 40 minutes after defendant departed, Amber M. drove Antonio and Reyes back to defendant's apartment. The trio arrived around 1:00 a.m., got out of the car and approached the door. Reyes, who apparently had no key, knocked on the apartment door but received no answer. Reyes began "kicking, knocking, cussing," and yelling at the door. There was still no answer, so Reyes moved to a window where she knocked and yelled some more. Reyes then placed a call on Amber's cellular telephone. Antonio heard a telephone ringing inside the apartment. Amber overheard Reyes say into the phone "[o]pen the front door." Then Reyes returned the phone to Amber. Antonio heard footsteps inside walking toward the door.

2

Defendant opened the door, looked outside, saw Amber and nodded at her. Defendant told Reyes to "[g]et the 'F' in here" as if he were trying to hurry her. He also said something to the effect she was making too much noise. As Reyes started into the apartment, defendant nudged her into the doorjamb and a shot was fired.

Reyes fell to the floor and defendant reached down to pick her up. Defendant told Reyes to get up and to stop "playing around." He was screaming and hysterical and exclaimed that he had shot her. While holding Reyes in his arms, defendant said, "[d]on't die. I love you. I'll change."

Antonio entered the house, grabbed a telephone and called 911. Then he picked up a handgun from the floor and threw it over a fence. Police later recovered the handgun.

The bullet from the single gunshot struck Reyes in the neck and she died as a result of the wound. The gun had been fired from a distance of zero to six inches. A firearms expert testified at trial that the weapon used by defendant had a trigger pull of 11.5 to 12 pounds, whereas a typical firearm has a trigger pull of three to seven pounds. The handgun was in working order at the time.

A jury acquitted defendant of first degree murder while lying in wait (Pen. Code, §§ 187, 190.2, subd. (a)(15))[1] and second degree murder, convicted him of voluntary manslaughter (§ 192, subd. (a)), and found that he used a firearm in the commission of the offense (§ 12022.5, subd. (a)).

The probation report listed three circumstances in aggravation. (Cal. Rules of Court, rule 4.421(a).)[2] First, the "crime involved great violence and a high degree of

---

[1] Undesignated statutory references are to the Penal Code.

[2] Further references to rules are to the California Rules of Court.

cruelty, viciousness, and callousness. The defendant shot the victim in her throat. The means of death was internal arterial bleeding and asphyxiation. Additionally, the victim did not initially die. The victim had to suffer [through] drowning on her own blood for several minutes." (See rule 4.421(a)(1).)

Second, the probation report stated the "victim was particularly vulnerable in that she was attempting to enter the residence she shared with the defendant. The defendant exited a non-lit apartment, while [the] victim attempted to enter from a lit porch." (See rule 4.421(a)(3).)

Third, the probation report stated the "manner in which the crime was carried out indicates planning and sophistication. The defendant waited several minutes inside the un-lit apartment, before opening the door and shooting the victim, who was outside in a lighted area. The defendant held the loaded [.38-]caliber [semiautomatic] handgun to the victim's neck and pulled the trigger. The handgun was loaded with hollow point ammunition, which is designed to cause the maximum amount of damage to living tissue." (See rule 4.421(a)(8).)

The trial court (Judge Curry) sentenced defendant to state prison for the upper term of 11 years plus 10 years for firearm use. In denying defendant probation, the trial court stated: "[Rule 4.]414(a)(3), [defense counsel] urges that the victim was not vulnerable, that it was an unintentional act on the Defendant's part. The jury found no evidence of planning or lying in wait, having acquitted him of first degree [murder]. The People urge, in fact, *she was vulnerable*, *and Court believes that she was. Given the basic facts that she is standing in a small area outside the door of the apartment*, *it is well lit*, *based on the believable evidence*. [*Defendant*] *is inside a dark apartment. Given the time of day, this occurred without artificial light being on in the apartment when he opened the door. The victim is totally visible. He is basically invisible because of the difference*." (Italics added.)

4

Thereafter, the trial judge imposed the upper term of imprisonment, and adopted two of the three suggested circumstances in aggravation, stating that "[t]he crime does involve great violence, high degree of cruelty, viciousness and callousness" and that the victim "was particularly vulnerable for all the reasons that I stated as I was going through the [rule 4.]414 analysis." The court added that the aggravating factors greatly outweighed defendant's lack of a prior record or any other mitigating factor.

In his direct appeal to this court (*People v. Leon*, *supra*, C047003), defendant claimed his sentence violated *Blakely* because the upper term was improperly based on facts (violence, cruelty, viciousness and callousness; and particular vulnerability) neither submitted to the jury nor proved beyond a reasonable doubt. Under compulsion of the then recent decision in *Black I*, we rejected the contention (*People v. Black* (2005) 35 Cal.4th 1238 (*Black I*), vacated *sub nom. Black v. California* (2007) 549 U.S. 1190 [167 L.Ed.2d 36]; see *People v. Black* (2007) 41 Cal.4th 799 (*Black II*)).

After defendant's federal habeas petition was denied by the United States District Court for the Eastern District of California, defendant appealed. The Ninth Circuit remanded the matter to the federal district court with instructions to grant the petition for writ of habeas corpus (*Leon v. Kirkland* (Nov. 17, 2010, No. 09-15696) [nonpub. opn.].) In doing so, the Ninth Circuit concluded that "[t]he manner that the victim was attacked in this case is analogous to being attacked from behind. None of the characteristics that California courts have used to support a finding of particular vulnerability are present here." The District Court granted habeas relief, ordering that defendant be released from custody unless the State of California elected to retry or resentence him.

At resentencing, the sentencing court (Judge Smith) stated that he, like Judge Curry, believed that the victim was particularly vulnerable, but "the Ninth Circuit has said no. . . . [¶] . . . And I'm of the opinion that the District Court's order granting the writ precludes this Court from imposing the upper term for voluntary manslaughter. I

5

think it's justified, but I believe that the order from the Federal District Court precludes this Court from imposing the upper term. [¶] . . . Specifically, it reads 'The trial court made a sentencing error of constitutional magnitude when it imposed the upper term for voluntary manslaughter.' It doesn't say that the trial court erred in finding the victim particularly vulnerable. If they had said that, I think we'd have a different situation. But what was said is it was constitutional error to impose the upper term." Judge Smith imposed the midterm of six years on the voluntary manslaughter conviction, and the upper term of 10 years on the firearm enhancement.

The People appealed, contending the trial court erred by failing to exercise its discretion to select an appropriate term of imprisonment from the three possible terms. We agreed, and remanded the matter for resentencing. (*People v. Leon*, *supra*, C068005.) In so doing, we noted that "[o]n this record, the trial court could find callousness in that, even if defendant was entitled to possess a loaded firearm in his home as his counsel argued, defendant had sufficiently been put on notice—both by the telephone call and by his observation of Reyes upon opening the door—that the 'gangbangers' were not present and no reason for an armed conflict existed. Escalating his and Reyes's prior argument about money into an armed confrontation at the doorstep demonstrated an utter disregard for the safety and well-being of Reyes and her companions. [¶] In *People v. Gutierrez* (1992) 10 Cal.App.4th 1729 the appellate court found a high degree of cruelty, viciousness, and callousness where the defendant stalked and pursued his victims for several blocks while riding a motorcycle. (*Id*. at pp. 1735-1736.) The court noted this 'expos[ed] the passengers, other drivers, and pedestrians to the dangers of a traffic accident.' (*Ibid*.) [¶] Here, keeping a firearm at the ready *after* receiving the telephone call and *after* observing Reyes (as opposed to 'gangbangers') at the threshold exposed Reyes and her companions to the dangers of a firearm incident even *before* defendant evidently elected to fire the weapon under circumstances

6

constituting voluntary manslaughter. The trial court could find that this showed even less regard for the safety of Reyes and her companions than the defendant had shown in *Gutierrez.* At resentencing, the trial court would be entitled, albeit certainly not compelled, to find that the offense involved a high degree of callousness."

At resentencing, defense counsel argued that the facts do not support a finding that the crime involved a high degree of cruelty, viciousness and callousness because "all the facts that could [otherwise have] justified that finding are consumed and subsumed" by facts that constitute the offenses and "there are no facts except the gravamen of the offense." The People urged the trial court to adopt Judge Smith's reasoning, including that Reyes was a particularly vulnerable victim.

The sentencing court (Judge Scrogin) imposed the upper term on both the substantive offense and the firearm enhancement. "[I] am basing my imposition of the upper term of 11 years for the voluntary manslaughter on the fact that according to [rule] 4.421(a)(1) I do find the crime involved a high degree of callousness. Callousness, a feeling or showing of no sympathy for others with a hardened heart, is the Webster's definition. [¶] Even if the defendant was entitled to possess this firearm in his house, again his castle, the defendant had sufficiently been put on notice by the telephone call. According to [the] probation report, Rosalie Reyes came to the apartment complex with her friends Amber [M.] and Antonio [L.] They walked her to her apartment. No lights were on in the residence and the door was locked. The porch light was on from the front door. The door to the apartment had a peephole for the occupants to look out. [Reyes] banged on the door of the apartment and began yelling and cussing for the defendant to open the door. [Reyes] uses Amber [M.]'s cell phone to call the defendant inside the apartment. One witness stated they heard the phone ring inside the apartment. Another witness said they heard [Reyes] talking to someone on the cellular phone. [Reyes] waited outside the apartment for approximately five minutes after initially arriving. Then the

7

defendant opens the door and states the quote that I previously referred to 'You're making too much noise. Get the F word in here.' She steps into the apartment doorway. Antonio and Amber began to walk away. Then the defendant placed—then he shot her with the .38. He had been significantly put on notice both by the call and his own personal observation of [Reyes], the victim, upon opening the door, that it was [Reyes] and not the gangbangers from the gas station. There was no reason for them to have an armed conflict over the argument about money that had occurred 45 minutes before. [¶] He escalated their argument about money to an armed confrontation at the doorstep. This demonstrated an utter disregard for the safety and well-being of [Reyes] and her companions. This was callousness.

"I am making the finding that his conduct put everybody else at risk. It was foolish. It was hard-hearted. He had no reason to have a gun to open the door for [Reyes]. It was obvious she wasn't a gangbanger. She just talked to him on the phone. He was swearing at her. He wasn't swearing at the gangbangers. This is the factor which the Third District Court of Appeal has noted. And the argument which the Third District Court of Appeal has already stated could justify the upper term. [¶] I concur with the Third District Court of Appeal. I have reviewed *People* [*v.*] *Gutierrez* [(1992) 10 Cal.App.4th 1729] noted by the Third District Court of Appeal in their opinion on this case where the appellate court found a high degree of callousness. And I believe the *Gutierrez* case is indistinguishable from this case, and I am following it."

## DISCUSSION

### I. Imposition of the Upper Term for Voluntary Manslaughter

Defendant first contends the trial court's decision to impose the upper term for voluntary manslaughter was an abuse of discretion.

8

He is correct that we review a trial court's decision to impose an upper term for an abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) We must affirm unless there is a clear showing that the chosen sentence was arbitrary or irrational. (*People v. Hubbell* (1980) 108 Cal.App.3d 253, 260.)

Voluntary manslaughter is punishable by imprisonment for three, six, or 11 years. (§ 193, subd. (a).) Rule 4.420(a) requires the court to select the upper, middle, or lower term. Rule 4.420(b) states that in exercising its discretion, the trial court may consider any aggravating or mitigating circumstances. The trial court may consider the case record, the probation officer's report, other specified reports, statements in aggravation and mitigation, and other evidence introduced at the sentencing hearing. (Rule 4.420(b); § 1170.)

One of the aggravating circumstances, and the one the trial court relied on here, is that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Rule 4.421(a)(1).) The trial court is vested with broad discretion in weighing the aggravating and mitigating factors, and a single factor in aggravation will support imposition of the upper term. (*Black II*, *supra*, 41 Cal.4th at p. 813; *People v. Steele* (2000) 83 Cal.App.4th 212, 226.)

Defendant claims that the trial court relied upon improper factors in imposing the upper term sentence on his voluntary manslaughter conviction. First, he contends the court's statement that defendant "escalated their argument about money to an armed confrontation at the doorstep" demonstrates the court shared the prosecutor's view that defendant "committed first degree murder," notwithstanding that the jury rejected theories that defendant had lain in wait or premeditated a murder, and convicted him only of voluntary manslaughter. Whatever the prosecutor's view, the record does not suggest the trial court shared it.

9

The quoted language defendant finds objectionable derives from our prior opinion on resentencing (*People v. Leon*, *supra*, C068005), and we disagree that it reflects a misunderstanding or refusal to accept the crime of which defendant was convicted. Defendant need not have premeditated a murder to have had his earlier disagreement with Reyes over money contribute to his irritation with her making too much noise as she yelled at him to open the door; his irritation is reflected in his cursing at her and demand that she come into the house. And, in any event, defendant's carrying a weapon to the door after he knew she was there waiting to be let in "demonstrated an utter disregard for the safety and well-being of [Reyes] and her companions." The trial court's conclusion was neither arbitrary nor irrational, and it did not abuse its discretion in so finding.

Nor did the trial court abuse its discretion, as defendant urges, in finding that the shooting was callous. Defendant's actions, i.e., keeping a firearm at the ready when he opened the door, represented an utter disregard for the safety and well-being of Reyes and her companions, because defendant knew Reyes—not "gangbangers"—was at the door: She had yelled to be let in; he had spoken to her by cell phone; and he saw her when he opened the door, if not before through the peephole. Callousness as an aggravating factor can be established with evidence the defendant recklessly "exposed [the victims] to danger." (*People v. Gutierrez, supra*, 10 Cal.App.4th at pp. 1735-1736.) Under the circumstances, the trial court did not abuse its discretion in concluding defendant acted without sympathy for others, and with a hardened heart.

## II.  Calculation of Custody Credits

Defendant also contends the trial court erred in failing at resentencing to calculate the total number of actual days served in custody. The People concede the error, and we agree. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23 ["When, as here, an appellate remand results in modification of a felony sentence during the term of imprisonment, the

10

trial court must calculate the *actual time* the defendant has already served and credit that time against the 'subsequent sentence.' "].)

The August 13, 2012 abstract of judgment correctly reflects that defendant is entitled only to conduct credit for time served in jail prior to his sentence, i.e., 421 days of actual time and 63 days of conduct credit (pursuant to § 2933.1). But the abstract fails to reflect that defendant is entitled to an additional 2,996 days of actual custody credit for the time he served in prison between the initial sentencing and the resentencing, for a total award of actual custody credit of 3,417 days—421 days of presentence actual custody credit plus 2,996 days of actual custody credit for time spent in a state institution following the original sentencing. The August 13, 2012 abstract of judgment must be amended accordingly.

## DISPOSITION

The matter is remanded to the trial court with instructions to amend the August 13, 2012 abstract of judgment to reflect: Defendant is entitled to 3,417 days of actual custody credit and 63 days of presentence conduct credit, for a total award of custody credits of 3,480 days. As modified, the judgment of conviction is affirmed. A certified copy of the amended abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation.

                                                        BUTZ            , J.

We concur:

        RAYE              , P. J.

        DUARTE          , J.