Filed 7/29/13  P. v. Jones CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JEFFREY JONES,<br><br>        Defendant and Appellant. | A136724<br><br>(San Francisco City & County<br>Super. Ct. No. 206448) |

After revoking probation, the trial court sentenced defendant Jeffrey Jones to an aggravated, five-year prison term for second degree robbery (Pen. Code, § 211).[1] Defendant asserts the trial court erroneously considered the nature of his probation violation when selecting an aggravated term and erroneously sentenced him without a sufficiently current probation report.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 10, 2008, defendant and four other males attacked and robbed two individuals in the SOMA area of San Francisco.  The attackers punched the victims in the face and stole their cell phones, some cash, a wallet, and car keys.  On August 25, defendant, along with two codefendants, pleaded guilty to second degree robbery (§ 211) pursuant to a negotiated disposition.  On September 16, the trial court suspended imposition of sentence and placed defendant on five years' probation.  This disposition

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

was in accord with the parties' plea agreement and the September 16 probation report, which concluded defendant's youth, lack of substance abuse, and job and education prospects, allowed for probation despite the fact the offense involved "an unprovoked and overt act of violence resulting in physical injuries."

Two years later, in October 2011, while still on probation, defendant accosted an individual near the intersection of Powell and Market Streets in San Francisco. Defendant slapped the victim's hand, knocking his cell phone to the ground, where it broke into pieces. Defendant nevertheless walked off with the phone. The victim followed, was able to flag down a police officer and thus ensured defendant's arrest.

The district attorney moved to revoke defendant's probation. The probation department prepared a supplemental report on November 18, recommending revocation.

At the revocation hearing, in January 2012, the trial court received testimony about the 2011 incident and other alleged probation violations. The court revoked probation, finding defendant was responsible for the October 2011 incident, had been out of state without permission, had been disruptive in custody, and had been arrested "out of state" and later "out of county."

In late April, defendant's counsel declared a doubt as to his client's competency to stand trial, proceedings were suspended, and sentencing on the underlying robbery conviction, delayed. Proceedings resumed on May 30, after the court reviewed a 10-page psychological report evaluating defendant's mental condition and finding him competent.

At hearings in June and July, sentencing was again continued. At each of these hearings, the court requested a "supplemental report on credits," requests defendant did not comment upon. In fact, from shortly after his probation was revoked until he was sentenced on the underlying conviction, the probation department prepared seven supplemental reports on credits: on February 10, 2012, March 2, 2012, March 16, 2012, April 27, 2012, July 6, 2012, August 10, 2012, and September 7, 2012. Defendant, himself, requested nothing from probation.

2

Sentencing eventually took place on September 14.  The trial court found the August 2008 offense involved multiple victims who were violently "ganged up" on.  It also found "troubling" the 2011 incident and what it viewed as an "escalation in violence."  Defendant asserted his marginalized mental state was a mitigating factor.  The court did not agree, and "given the facts of this case and the underlying count of conviction," the court "impose[d] the high end of five years in State prison."

**DISCUSSION**

### Choice of Upper Term

Defendant first asserts his upper term sentence was impermissibly based on the nature of the 2011 crime giving rise to the revocation of his probation, and not on his 2008 crime.  (See Cal. Rules Court, rule 4.435(b)(1)[2] ["The length of the sentence must be based on circumstances existing at the time probation was granted, and subsequent events may not be considered in selecting the base term or in deciding whether to strike the additional punishment for enhancements charged and found."]; see also *People v. Goldberg* (1983) 148 Cal.App.3d 1160, 1163 [This rule "was intended to preclude the possibility that a defendant's bad acts while on probation would influence his sentence upon revocation of probation."].)

Defendant has forfeited this issue, however, by failing to raise it in the trial court.  (*People v. Scott* (1994) 9 Cal.4th 331, 356 ["[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal."]; *People v. Steele* (2000) 83 Cal.App.4th 212, 226 [waiver of objection to use of particular aggravating factor if not raised in trial court].)

Even had defendant not forfeited the issue, we would reject his argument on the merits.  In urging that the upper term be imposed, the prosecutor emphasized two points—that there were multiple victims in the August 2008 crime and they were

---

[2] All further rule references are to the California Rules of Court.

3

violently assaulted. One of the victims estimated he was struck approximately 10 times during the robbery. Defense counsel argued the court should consider "not only . . . the old case but what happened in the new case, . . . that there was not extreme violence in the new case. There were no blows struck. It was essentially a snatch and grab and then running away . . . ." Defense counsel also urged defendant's mental difficulties were a mitigating circumstance. Counsel urged credit for time served and reinstatement on probation.

The trial court then asked defense counsel directly why it should not impose the high term asked for by the prosecutor, noting the prosecutor had rarely asked for the high term in any case and treated "every case individually." In response, defense counsel focused on defendant's "marginalized mental state." The prosecutor responded defendant's probation performance—suffering five arrests, making criminal threats, disruptive behavior in jail—supported incarceration. He further observed, state prison might afford defendant greater resources to treat mental health issues.

The court imposed the high term. It acknowledged "[t]his has been a very difficult case," but it was "very concerned with the violence. [¶] The underlying offense involved multiple victims. It was essentially a ganged up and people being beaten. We shouldn't tolerate that in this civilized community." The court also noted the disquietingly similar probation violation, and saw it "as an escalation in violence." The court "appreciate[d], [defense counsel], what you are saying, but given the facts of this case and the underlying count of conviction which involved multiple victims and violent assaults, this Court is going to impose the high end of five years in State prison."

In context, the record reflects that trial court was addressing two things—defense counsel's suggestion that defendant's mental health issues be viewed as a mitigation factor warranting reinstatement of probation and, if probation was not reinstated, the appropriate prison term, which the prosecution urged should be the high term of five years. Accordingly, the record does not demonstrate the trial court imposed the high term

4

for defendant's robbery conviction because of the nature of defendant's probation violation.  (See *People v. Guerra* (2006) 37 Cal.4th 1067, 1101 ["trial court is presumed to follow established law absent evidence to the contrary"], disapproved on other grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

Furthermore, even if the trial court gave any thought to the probation violation in selecting the prison term for the underlying conviction (and the record does not, in context, show that that occurred), we conclude "there is no reasonable probability that a more favorable sentence would have been imposed" had the trial court not done so. (*People v. Osband* (1996) 13 Cal.4th 622, 729–730.)  Because of the aggravating factors the trial court properly found (multiple victims and violence), and the court's rejection of the potentially mitigating factor urged by defense counsel (defendant's marginalized mental state), we conclude a more favorable sentence would not be reasonably probable on remand.  (See *People v. Steele*, *supra*, 83 Cal.App.4th at p. 226 ["the finding of even one [permissible] factor in aggravation is sufficient to justify the upper term . . . [e]ven if some of the factors were impermissible"]; *People v. Williams* (2009) 170 Cal.App.4th 587, 642 ["Because a single factor in aggravation can support an upper term sentence . . . the trial court's reliance on additional factors not found by the jury does not require remand for resentencing."]; *People v. King* (2010) 183 Cal.App.4th 1281, 1322 ["Trial courts need not state reasons for rejecting or minimizing a mitigating factor . . . [and] 'unless the record affirmatively indicates otherwise, the trial court is deemed to have considered all relevant criteria, including any mitigating factors.' "], fn. omitted; rule 4.409 ["Relevant criteria enumerated in these rules must be considered by the sentencing judge, and shall be deemed to have been considered unless the record affirmatively reflects otherwise."].)

**Sufficient Probation Report**

Defendant secondly asserts the trial court failed to obtain an adequate, recent probation report before imposing sentence.  According to defendant, the November 18,

2011 probation report, used at the January 2012 revocation hearing, had become stale by the September 2012 sentencing.

"The court must order a supplemental probation officer's report in preparation for sentencing proceedings that occur a significant period of time after the original report was prepared." (Rule 4.411(c).) According to the advisory committee comment, "[s]ubdivision (c) is based on case law that generally requires a supplemental report if the defendant is to be resentenced a significant time after the original sentencing, as, for example, after a remand by an appellate court, or after the apprehension of a defendant who failed to appear at sentencing. The rule is not intended to expand on the requirements of those cases." (Advisory Com. com., 23 pt. 1B West's Ann. Codes, Rules (2006 ed.) foll. rule 4.411, pp. 235–236.) Moreover, "[t]he rule does not require a new investigation and report if a recent report is available and can be incorporated by reference and there is no indication of changed circumstances. . . . If a full report was prepared in another case in the same or another jurisdiction within the preceding six months, during which time the defendant was in custody, and that report is available to the Department of Corrections and Rehabilitation, it is unlikely that a new investigation is needed." (*Ibid.*; see *People v. Dobbins* (2005) 127 Cal.App.4th 176, 180–181 (*Dobbins*).)

Defendant has also forfeited this argument. Supplemental reports were discussed at numerous hearings leading up to sentencing, and the probation department prepared seven supplemental reports on custody credits between February 2012 and September 2012, with the final report coming just a week before sentencing. Whether or not a defendant can forfeit an appellate challenge to the *absence* of a supplemental probation report to which he is entitled (see *Dobbins*, *supra*, 127 Cal.App.4th at p. 182; § 1203, subd. (b)(4)), challenges to a report's *adequacy* must still be raised below or lost. (*People v. Llamas* (1998) 67 Cal.App.4th 35, 39 [" 'It is settled that failure to object and make an offer of proof at the sentencing hearing concerning alleged errors or omissions

6

in the probation report waives the claim on appeal.' "].)  In this case, defendant can only be said to challenge the adequacy of the supplemental reports, not whether they were "prepared," and has therefore waived this issue.  (See § 1203, subd. (b)(4).)

Even if the trial court erred in failing to obtain a more comprehensive supplemental probation report, that error was, again, harmless.  While the lack of a current probation report "is generally treated as reversible error" (*People v. Mariano* (1983) 144 Cal.App.3d 814, 824–825; see also *People v. Rojas* (1962) 57 Cal.2d 676, 682–683), no appellate court has held reversal is required *per se*.  On the contrary, appellate courts still apply a *Watson*[3] harmless error analysis, as there is "no federal constitutional right to a supplemental probation report."  (*Dobbins*, *supra*, 127 Cal.App.4th at p. 182 [error was harmless]; *People v. Centeno* (2013) 214 Cal.App.4th 843, 860 (*Centeno*) [same].)  Under this standard, the judgment will be affirmed absent a reasonable probability of a more favorable result to defendant on remand.  (*Dobbins*, *supra*, 127 Cal.App.4th at p. 182; *Centeno*, *supra*, 214 Cal.App.4th at p. 860.)

As in *Dobbins* and *Centeno*, there is no reasonable probability a more extensive probation report would change the outcome here.  Defendant suggests no new favorable information that might have been included in the supplemental probation reports.  (See *Centeno*, *supra*, 214 Cal.App.4th at p. 860 ["Defendant does not assert there was any new information that should have or would have been included in a supplemental report that would have resulted in a more favorable sentence for defendant."].)  His mental health issues, for instance, were squarely before the court, both through counsel's argument at sentencing and the detailed mental health report prepared in connection with the declared doubt of defendant's competency.  (See *ibid.* ["defendant's trial counsel informed the trial court of defendant's experiences in jail, thus filling any time gap, to the extent new

---

[3]  *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).

information needed to be offered"]; *Dobbins*, *supra*, 127 Cal.App.4th at p. 183 [a separate Proposition 36 status report gave the trial court the information it needed about defendant's behavior on probation].)  Nor has defendant taken issue with the contents of the 2008, 2011, and subsequent reports.  (See *Dobbins*, at p. 183 ["The original probation report apprised the trial court of defendant's background and other relevant information."].)  In addition, the trial court unequivocally expressed an intention to not reinstate probation and to impose a prison term.  (See *ibid.* ["his record was such (including as it did numerous parole violations and periods of incarceration) that there was little justification for a further grant of probation"].)

### DISPOSITION

The judgment is affirmed.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Sepulveda, J.*

_____

\* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8