Filed 6/27/14  P. v. Mercadel CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JIMMIE LEE MERCADEL,<br><br>    Defendant and Appellant. | G048881<br><br>(Super. Ct. No. 13HF1216)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Reversed in part.

Marta I. Stanton for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Jimmie Lee Mercadel appeals from the sentence imposed after he was convicted of second-degree burglary for an abortive attempt to shoplift $2,300 in merchandise from an Irvine Wal-Mart. He asserts he should have been given either straight probation or a prison term lower than the maximum he received. He also asserts that a condition of his mandatory supervision after incarceration was unconstitutional.

We affirm the sentence imposed and the trial court's decision to deny probation. Although only 25 years old when he was convicted, Mercadel already had a 12-year history of committing ever more serious offenses while repeatedly violating the terms of his various probations. In fact, he was on probation from a prior theft when he committed this crime. The trial court was well within its discretion when it denied probation and imposed the maximum sentence, hoping to encourage Mercadel to consider the likely outcome of his present course before he did something that could put him away for a large portion of his life.

We reverse the condition of mandatory supervision, however. The condition is not "narrowly tailored," that is, it is not reasonably related to probation supervision of a person convicted of Mercadel's crime. It therefore does not pass constitutional muster, and it must be more narrowly drawn.

## FACTS

On April 9, 2013, an Irvine police officer received a call informing him that a person in a local Wal-Mart was behaving like a shoplifter. The officer drove to the Wal-Mart and parked outside, watching the exit doors, while Wal-Mart's loss prevention personnel spoke to a police dispatcher about the person's movements inside the store, and the dispatcher relayed the information to the officer. About 10 minutes after the officer arrived, a person matching the description given by the Wal-Mart personnel walked outside, just as the watchers inside the store told the dispatcher the person they were

observing was leaving the store. This person, Mercadel, was arrested and taken into custody.

Mercadel was charged with second-degree burglary under Penal Code sections 459 and 460, subdivision (b).[1] At trial, a Wal-Mart employee in charge of monitoring the Irvine store for shoplifters testified as the only witness. He stated he had observed Mercadel on store surveillance cameras acting in a manner typical of shoplifters: grabbing handfuls of the same high-end product without examining the price sticker, throwing them into a cart, and looking around to see whether he was being observed. Mercadel was also caught on camera stuffing some of the merchandise into a large Target shopping bag. He evidently had a confederate, because he emptied the Target bag into the shopping cart and abandoned it after another man came into the store and presumably told him the police were setting up outside to apprehend him.[2] In the abandoned cart, Wal-Mart employees found 64 items, the total price of which was $2,300.

Mecadel was convicted of second-degree commercial burglary. The trial court denied probation and sentenced him to three years, the high term, with the sentence split evenly between custody and mandatory supervision under section 1170, subdivision (h).[3] Explaining its decision on both probation and sentencing, the court reasoned that Mercadel, although still a young man, had begun his life of crime at age 13 and had, since that time, proceeded from minor brushes with the law to more serious offenses. Although he had been on probation almost continuously between age 13 and age 19, and then again beginning at age 22, the experiences appeared to have made no impression on him, as

---

[1] All further statutory references are to the Penal Code.

[2] The Wal-Mart employee testified that one type of shoplifting is the "push-out," during which the thief runs out of a side exit with a full shopping cart to an accomplice waiting in a car. Subsequently they take the merchandise to another store for a return, where they get a store credit because they have no receipt. They then can use the store credit to pay for whatever they want from the store.

[3] A probation officer recommended three years' probation. The prosecutor recommended the low term, noting previous failures of probation to correct Mercadel's behavior.

evidenced by numerous probation violations.[4]  Now he had engaged in a pre-planned and potentially dangerous felony, with an accomplice, intending to steal over $2,000 in merchandise – while on probation for a similar crime.  In the judge's view, the courts had been slapping Mercadel's wrist for too many years and had thereby persuaded him that he could continue to commit crimes without serious consequences.  The judge expressed a hope that a combination of real jail time and subsequent close supervision by a probation officer could turn Mercadel's life around.  Mercadel did not object either to the sentence or to any of the mandatory supervision conditions at any time during the hearing.

## DISCUSSION

Mercadel has raised two issues on appeal.  First, he asserts that the court should not have sentenced him to three years – the maximum sentence for second-degree burglary – but should have sentenced him either to probation or to a lower term.  The second issue deals with one of the conditions of his mandatory supervision once he was out of jail: "maintain a residence subject to the approval of the probation . . . officer . . ." Mercadel now objects that this condition is overbroad and violates his constitutional right of free association and his right to travel.

I.        **Sentence and Probation**

We review the sentence imposed by the trial court, including whether to grant probation, for abuse of discretion.  (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*).)

---

[4]      A probation and sentencing report included eight pages of Mercadel's prior offenses, beginning at age 12 when he grabbed a fellow student's money.  Since that time he had, as a juvenile, threatened other students with a knife, stolen a truck, and exposed himself to a little girl in a beauty shop.  As an adult, he had been convicted of falsely identifying himself to a police officer, stealing a laptop and a cell phone from a university professor, indecent exposure, and resisting arrest.

## A. Three-Year Sentence

Mercadel asserts on appeal that the imposition of the maximum term – three years – for his second-degree burglary conviction was "irrational and arbitrary." When a court selects the sentence from among the upper, middle, and lower terms authorized by statute, California Rules of Court, rule 4.420(b)[5] allows it to consider circumstances in aggravation and mitigation and any other factor reasonably related to the sentencing decision. The circumstances of aggravation and mitigation are found in rules 4.421 and 4.423 respectively.

Mercadel did not object to any of the aggravating factors at the sentencing hearing, either before or after sentence was pronounced, and "the finding of even one factor in aggravation is sufficient to justify the upper term." (*People v. Steele* (2000) 83 Cal.App.4th 212, 226.) He also did not object to the sentence itself. (See *People v. Scott* (1994) 9 Cal.4th 331, 353 [waiver doctrine applies to claims involving trial court's failure to properly make discretionary sentencing choices].) Mercadel has thus waived any error in the sentence the court handed down.

Even if Mercadel had preserved this issue for appeal, it would still be meritless. The trial court properly considered the circumstances in aggravation, there being no mitigating circumstances at all. Among the ones listed in the rule, the court cited "[t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism," (rule 4.421(a)(8)); "[t]he crime involved an attempted . . . taking . . . of great monetary value," (rule 4.421(a)(9)); "[t]he defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness," (rule 4.421(b)(2)); "[t]he defendant was on probation . . . when the crime was committed;" (rule 4.421(b)(4)); and "[t]he defendant's prior performance

---

[5] All further rule references are to the California Rules of Court.

on probation . . . was unsatisfactory." (Rule 4.421(b)(5).) The court also noted that Mercadel's prior sentence for commercial burglary had been reduced to a misdemeanor, apparently causing him to believe that all such crimes were misdemeanors, for which he would get nothing worse than informal probation as a sentence.[6] The court believed a high-term sentence was necessary to disabuse Mercadel of these notions.

The trial court's weighing of the aggravating factors (several serious ones) against the mitigating factors (zero) provided ample justification for a high-term sentence. Far from being "arbitrary and irrational," a stiff sentence may be just the thing to deflect Mercadel from what is obviously a career path of increasingly serious crimes. Certainly leniency has had no such salutary effect.

### B. Denial of Probation

Many of the same factors the court considers when it imposes a sentence also apply to determining whether to grant probation. Rule 4.414 sets out a non-exclusive list of criteria affecting probation.

The criteria of rule 4.414 militated strongly against probation. The court noted the severity of the crime (rule 4.414(a)(1)); the degree of monetary loss (rule 4.414(a)(5)); Mercadel's active participation (rule 4.414(a)(6)) and the likelihood of repetition (rule 4.414(a)(7)); the sophistication of the crime itself (rule 4.414(a)(8)); Mercadel's prior record (rule 4.414(b)(1); his poor performance on probation in the past (rule 4.414(b)(2)[7]; and the unlikelihood that sentencing him to probation for this crime would result in an improved performance. (Rule 4.414(b)(4).) The court would have been well within its discretion to deny probation entirely.

---

[6] The probation officer reported that Mercadel refused to participate in an interview before the preparation of the probation and sentencing report because he thought he had been convicted of a misdemeanor, for which no report was necessary. The probation officer's explanation failed to persuade him of his error.

[7] According to the probation report, Mercadel was on informal probation for three different crimes when he committed his second-degree burglary at the Wal-Mart.

Instead, the court afforded Mercadel something resembling probation: mandatory supervision. (See § 1170, subd. (h)(5)(B)(i) and (ii) [mandatory supervision is undertaken "by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation"]). The court split Mercadel's three-year sentence evenly between jail time and mandatory supervision.[8] By splitting the sentence, the court hoped, first, to convey to Mercadel that he was in serious trouble ("This isn't misdemeanor land anymore.") and, second, to afford him the benefits of oversight by a probation officer after his release, in the hope Mercadel would learn "he can get along without . . . committing crimes." Whether or not Mercadel takes advantage of the opportunity, the court acted well within its discretion in affording it.

## II.        Residence Restriction

A probation condition may be overbroad if it unduly restricts the exercise of a constitutional right. (*In re Byron B.* (2004) 119 Cal.App.4th 1013, 1016.) Probation conditions are valid even though they restrict the exercise of constitutional rights if they are narrowly drawn to serve the important interests of public safety and rehabilitation and are specifically tailored. (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1084; see *People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1356, quoting *People v. Bauer* (1989) 211 Cal.App.3d 937, 942 [conditions impinging on constitutional rights must be "'carefully tailored'"].)

Whether a condition restricting a defendant's residence to one approved by a probation officer is unconstitutional is presently before our Supreme Court in *People v. Schaeffer* (2012) 208 Cal.App.4th 1, S205260, rev. granted Oct. 31, 2012 (*Schaeffer*).[9]

---

[8]    The court also gave Mercadel credit for 260 days served (including 130 days of conduct credit) and terminated the probation sentences in the other criminal cases.

[9]    Actually the defendant in *Schaeffer* identified *two* conditions as unconstitutional: first, the defendant must reside at a residence approved by the probation officer, and, second, the defendant cannot move without the probation officer's permission. The defendant asserted that both conditions infringed on her right to travel and her freedom of association. (*Schaeffer, supra,* 208 Cal.App.4th at p. 4.) Mercadel's mandatory supervision is not subject to the second *Schaeffer* condition.

No published opinion has found the broad residential restrictions imposed here to be constitutional; indeed, *People v. Bauer* (1989) 211 Cal.App.3d 937 found a nearly identical provision to be unconstitutionally overbroad.

Mercadel claims the mandatory supervision condition requiring him to "maintain a residence subject to the approval of the probation . . . officer or mandatory supervision officer" is unconstitutionally overbroad because it infringes on his constitutional rights to travel and to freedom of association. We focus only on the constitutionality of the condition, not whether it is reasonable as applied to Mercadel. (See *Lent, supra*, 15 Cal.3d at p. 486 [test for reasonableness of probation conditions].) By failing to object below, Mercadel has forfeited all claims except a challenge "based on the ground the condition is vague or overbroad and thus facially unconstitutional." (*In re Sheena K.* (2007) 40 Cal.4th 875, 878.)

But even a facial challenge to constitutionality requires more than a one-size-fits-all approach. Our inquiry does not take into account the individual facts pertaining to this particular probationer – as would an "as applied" challenge – but it must take into account the nature of the case and the goals and needs of probation in general. For example, what is constitutional in a case involving drug usage is not necessarily the same as what is constitutional in an assault case. The difficulties of the probation department and the probationer will be quite different in cases where the probationer may be fighting addiction than they will be in other cases. This broad consideration of the nature of the case must inform all decisions about whether the condition has been "narrowly tailored," even where, as here, we do not reach the personal circumstances of the probationer.

Here, the offenses are theft-related. The appropriate inquiry therefore, is whether the probation condition use is reasonably related to probation supervision of a thief. In that regard, we find *People v. Bauer, supra,* instructive. In *Bauer*, the defendant

8

was convicted of false imprisonment and assault. As a probation condition, the trial court required the defendant to "obtain his probation officer's approval of his residence . . . ." (*Bauer, supra*, 211 Cal.App.3d at p. 940.) The *Bauer* court concluded the restriction was unconstitutionally overbroad, explaining "[t]he condition is all the more disturbing because it impinges on constitutional entitlements – the right to travel and freedom of association. Rather than being narrowly tailored to interfere as little as possible with these important rights, the restriction is extremely broad." (*Id*. at p. 944.)

*Bauer* has been accepted since it was decided nearly 25 years ago, and has been applied in analyzing other probation conditions. For example, in *People v. O'Neil* (2008) 165 Cal.App.4th 1351 (a case involving drug sales but not usage), the appellate court found a probation condition prohibiting the probationer from associating with persons not approved by his probation to be unconstitutionally overbroad. (*Id*. at p. 1357-1358.) Relying on *Bauer*, the court explained the probation condition placed no limits or guidelines on the probation officer's discretion. Thus, "[w]ithout a meaningful standard, the order is too broad and it not saved by permitting the probation department to provide the necessary specificity." (*Ibid*.)

The probation condition here suffers from the same infirmity as the one in *Bauer*. It puts no limits on the probation officer's discretion. Probationer's residence could be disapproved for any reason, including inconvenience. Nothing about the nature of the charges suggests a need for such unfettered oversight, so we cannot approve this broad restriction. It must be re-drawn.

## DISPOSITION

The sentence and the mandatory supervision order are affirmed except for the residence restriction.  The matter is remanded to the trial court for imposition of a more narrowly drawn substitute condition.


                                             BEDSWORTH, J.


WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.