Filed 2/2/16  P. v. Frantz CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KARL ADOLPH FRANTZ,<br><br>    Defendant and Appellant. | F067901<br><br>(Super. Ct. No. F12904516)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Hayes H. Gable III, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and John A. Bachman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Gomes, Acting P.J., Poochigian, J. and Franson, J.

## INTRODUCTION

Appellant Karl Adolph Frantz was found guilty in 2013 of assault with a deadly weapon, with a true finding that he personally inflicted great bodily injury. He contends the trial court abused its discretion when it did not allow him to impeach a prosecution witness with her 2007 misdemeanor conviction for presenting a false claim for payment, a violation of Penal Code section 72. We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Frantz was homeless prior to April of 2012, when he moved in with Steven Melrose and Melrose's wife, Angel Smith. Frantz worked as a "sign shaker" at Melrose's store, Cowboy Joe's Smoke Shop. Smith owned a thrift store, which was next door to Cowboy Joe's.

Melrose testified that on the morning of June 19, 2012, Frantz was working as a sign shaker in front of Cowboy Joe's and was drinking alcohol. Melrose did not want a "drunk" sign shaker and told Frantz he could not drink and be out front shaking the business sign. Melrose poured out the drink Frantz was holding; Frantz said nothing. Melrose said Frantz walked off down the street and returned a couple hours later.

Frantz admitted he put vodka in a Slurpee cup. Frantz claimed that Melrose threw the drink "in my eyes and said something alluding to the fact of 'You're getting with my wife.… You're threatening to turn us in for fraud. If you come back here, I will kill you.'"

Frantz walked to a fire station. Officer Robert Lincoln responded to a 1:00 p.m. call of a man at the fire station claiming someone had thrown something in his eyes. Frantz told Lincoln he had been involved in an altercation with the owner of Cowboy Joe's and the owner threw vodka in his face. Lincoln saw no signs of injury to Frantz or any liquid on his face or clothing. Frantz smelled of alcohol and displayed "objective symptoms of somebody that's intoxicated. He had an odor of alcohol on his breath. He was very unsteady." Lincoln told Frantz "that it would be in his best interest to stay away

2.

from there and go sober up somewhere." According to Lincoln, Frantz "kind of laughed it off and agreed that he would stay away from the store."

Frantz, however, returned to the location and went into Smith's thrift store. Smith, Ligail Louise Linicon and Mildred Regina Thompson were inside the thrift store at the time. Linicon testified that when Frantz entered the thrift store, he seemed angry and agitated; Frantz walked around "upset, [and] mumbling." Thompson testified Frantz had said "You're gonna pay."

Linicon saw Frantz walk past a knife display in the store where a butcher block of knives was located; the knives were not locked. Linicon did not see a knife in Frantz's hand and did not know if a knife was missing from the display. Linicon said Frantz slammed the door as he walked out and the next thing she heard was a scream.

Melrose was sitting in a chair in front of his store when Frantz walked out of the thrift store. Frantz did not say anything, but walked over and stabbed him in the side. When Melrose tried to kick Frantz, Frantz stabbed him in the leg.

Smith witnessed the stabbing and thought Frantz intentionally stabbed Melrose because he stabbed him more than once. Melrose did not have a weapon and "was in no position to attack him back." Smith stated that Melrose exclaimed, "You just stabbed me" and that got her attention and she saw Frantz stab Melrose a "second time."

Smith testified she "took the knife from [Frantz] and kind of like tucked his arm back and held him towards the ground" and a couple people from the street stopped to assist. Frantz "tried to resist" and was "trying to get away." Smith testified Frantz was trying to continue his attack.

Officer Lincoln, who had conversed with Frantz at the fire station, also responded to the report of a stabbing at Cowboy Joe's. Lincoln arrived to find people detaining Frantz outside the store and Melrose sitting in a chair inside the store, with "blood all over the floor." Melrose was bleeding from wounds to his stomach and leg. There was a bloody knife on the store floor and a trail of blood drops from the sidewalk to inside the

3.

store.  The bloody knife "matched that of the other remaining knives that were still in the butcher block" in the thrift store and appeared to have been taken from the butcher block.

Officer Rodney Cancio was assisting Lincoln.  Frantz told Cancio "I did it" and stated "I was only trying to scare him, not kill him."  Frantz smelled of alcohol and told Cancio he had drunk a pint of alcohol.

Officer Brandi Phebus interviewed Frantz the day after the attack.  Frantz told her that after he left the fire station, he went back to the thrift store and grabbed a knife.  He stood next to Melrose and claimed Melrose said, "I'm going to kill you."  Frantz said he "had the knife in his hand and it kind of stuck" in Melrose's left shoulder.  As for the leg wound, when Melrose tried to stand up, he "kind of stuck himself."  Frantz claimed the attack was not intentional.  Frantz also claimed that Melrose had assaulted him in the past, but did not mention anything about Melrose striking or kicking him the day of the incident.

Melrose was hospitalized for five or six days as a result of the attack, two of them in critical care.  He had two surgeries while in the hospital.  Melrose was in pain as a result of the injuries.  Smith said Melrose, "hasn't been able to really work" since the attack.

Frantz was charged with assault with a deadly weapon (count 1), and making criminal threats (count 2).  As to count 1, it was alleged Frantz personally inflicted great bodily injury.  It also was alleged that Frantz had suffered a prior serious felony conviction in 1999 for attempted armed robbery.

Frantz pled not guilty to all charges.  Trial testimony began on June 27, 2013.  On July 1, 2013, the People dismissed the count 2 charge.

Frantz testified in his own defense.  Frantz stated he was an alcoholic and needed a drink the morning of June 19, 2012, because he "was starting to get the shakes."  He put vodka in a Slurpee cup.  When he went outside with his drink, Melrose grabbed it and

4.

threw it in his face. Frantz staggered down the street to the fire station and an ambulance and police were called.

Frantz returned to the store to collect his debit card. He claimed Melrose stated, "I told you if you c[a]me back I'd kill your ass." Frantz "always carried [a] butcher knife" because he had been jumped. He tried to unhinge his knife and Melrose leaned back in his chair and kicked him in the groin. Frantz testified he thought Melrose was going to "stab me, kill me." Frantz claimed the knife struck Melrose's leg when he kicked at Frantz and Melrose's stomach was cut when Frantz "fell into his shoulder."

Frantz claimed that he and Melrose's wife, Smith, had begun spending a lot of time together. Melrose accused him of "getting with my wife." A few days before the June 19 incident, Frantz claimed Melrose had "backhanded" him the car and also hit him with a golf club. Frantz claimed Melrose regularly carried a knife and on a couple of occasions a hand gun.

Frantz also claimed he saw Smith taking money that was supposed to go to the homeless. He stated Smith took $7,000 to $8,000.

After Melrose testified, he was observed leaving the courthouse by a private investigator, Rick Barclay. Barclay testified Melrose's movements and demeanor substantially changed after he exited the courthouse. While in the courtroom, Melrose appeared to struggle walking and be in pain; outside he appeared to move normally and without pain.

On July 2, 2013, the jury returned a verdict of guilty on the count 1 offense and found true the allegation of personal infliction of great bodily injury. In a bifurcated proceeding on July 3, the trial court found true that Frantz had suffered a prior serious felony conviction.

The trial court imposed sentence on August 23, 2013. Frantz was sentenced to a total of 11 years in state prison. Frantz filed his notice of appeal on August 26, 2013.

5.

## DISCUSSION

Frantz claims the trial court abused its discretion by refusing to allow Frantz to impeach Smith with evidence of her 2007 misdemeanor conviction for violating Penal Code section 72.  We disagree.

*Factual Summary*

Prior to Smith's testimony, Frantz was instructed to disclose any impeachment evidence he intended to use.  Frantz claimed that Smith had a 2007 misdemeanor conviction for violating Penal Code section 72.  The prosecutor argued that as a misdemeanor conviction, it was "not admissible.  It's not relevant."  The trial court remarked that misdemeanors could be used for impeachment purposes, to which the prosecutor responded, "When it directly relates to a relevant issue."

The trial court inquired, "What's the relevant issue?"  Frantz responded that he was "bringing up issues of fraud perpetrated on me."  The trial court informed Frantz, "That's not an issue in this case."  Frantz replied, "it's a motive to have me live there, for taking my money, using my debit card."

Frantz claimed the relevancy was that Smith "was getting money, checks, and she was treating me –."  At that point, the trial court interrupted and told Frantz he could only cross-examine Smith about "issues pertaining to this case."

*Analysis*

Evidence Code[1] section 210 provides that to be relevant, evidence must have some "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (§ 210.)  This includes evidence that is "relevant to the credibility of a witness." (§§ 210, 780.)

On the other hand, a matter is "collateral" if it has no logical bearing on any material, disputed issue.  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.)  A fact may bear

---

**1**　　References to code sections are to the Evidence Code unless otherwise specified.

6.

on the credibility of a witness and still be collateral to the case.  (*Ibid.*) For example, in *People v. Dement* (2011) 53 Cal.4th 1, the California Supreme Court held that an inmate who testified for the prosecution about seeing a prison murder could not be impeached with evidence that he had lied in court about a murder he was convicted of several years earlier.  (*Id.* at pp. 50-52.)  In *People v. Harris* (2008) 43 Cal.4th 1269, the California Supreme Court concluded a prosecution witness who described the defendant's incriminating statements could not be impeached with evidence of his poor performance on juvenile probation, even though it demonstrated lax character.  (*Id.* at pp. 1291-1292.)

A trial court has wide latitude to exclude evidence offered for impeachment that is collateral and has no relevance to the underlying action.  (*People v. Homick* (2012) 55 Cal.4th 816, 865.)  A trial court's exercise of discretion in this regard necessarily encompasses a determination that the probative value of any such impeachment evidence is outweighed by its prejudicial, time-consuming, or confusing nature.  (§ 352.)  Section 352 gives a trial court broad power to prevent "nitpicking" over "collateral credibility issues."  (*People v. Lewis* (2001) 26 Cal.4th 334, 374-375.)  We review for abuse of discretion a trial court's decision whether to admit misdemeanor convictions for purposes of impeachment.  (*People v. Chatman* (2006) 38 Cal.4th 344, 373-374.)

The long term effects of misdemeanor, versus felony, convictions are very different.  (*In re Valenti* (1986) 178 Cal.App.3d 470, 475.) Past criminal conduct amounting to a misdemeanor that has "some logical bearing upon the veracity of a witness" is admissible, subject to the trial court's discretion.  (*People v. Wheeler* (1992) 4 Cal.4th 284, 295.)  When the witness to be impeached with a misdemeanor is not the defendant, the trial court should weigh whether the conviction reflects on honesty and is near in time, and make a determination under section 352.  (*People v. Leonard* (2014) 228 Cal.App.4th 465, 497.)

Frantz stated he wanted to cross-examine Smith on a wide range of issues pertaining to Smith's alleged use of his debit card, getting money, and checks.  The trial

court is to exercise reasonable control over the mode of interrogation of a witness. (§ 765, subd. (a).) Here, the trial court did not abuse its discretion in excluding evidence of Smith's then six-year-old misdemeanor conviction for presenting a fraudulent claim for payment. As the trial court noted, there were no issues regarding fraudulent claims or any wrongful receipt of monies relevant to Frantz's trial. Thus, any evidence regarding the 2007 conviction was wholly collateral and had no relevance to the underlying action. (*People v. Rodriguez, supra,* 20 Cal.4th at p. 9.)

Granted, the 2007 conviction did involve dishonesty and therefore, reflects on credibility. (*People v. Steele* (2000) 83 Cal.App.4th 212, 222-223.) However, the fact of a conviction of a misdemeanor is inadmissible; the past conduct that amounted to a misdemeanor is admissible. (*People v. Contreras* (2013) 58 Cal.4th 123, 157 & fn. 24.) Frantz did not seek to impeach with the conduct underlying the 2007 conviction, but the conviction itself, which is improper evidence. (*Ibid.*)

Furthermore, examining Smith about the underlying facts surrounding the 2007 conviction and Frantz's allegations that Smith used his debit card and took money and checks would necessitate undue time and generate confusion; none of this conduct was relevant to the pending charges. The trial court has the discretion to exclude evidence that is collateral to the issues and would necessitate undue time and confusion. (*People v. Lewis, supra,* 26 Cal.4th at pp. 374-375.)

We conclude the trial court did not abuse its discretion in refusing to allow Frantz to impeach Smith with the fact of her 2007 misdemeanor conviction. (*People v. Chatman, supra,* 38 Cal.4th at pp. 373-374.) In light of our conclusion that the trial court did not abuse its discretion, we need not address any claims of a violation of due process or right to a fair trial. (*People v. Cole* (2004) 33 Cal.4th 1158, 1195 & fn. 6.)

Furthermore, any error in excluding the impeachment evidence was harmless. The erroneous exclusion of impeachment evidence is evaluated under the *People v. Watson* (1956) 46 Cal.2d 818, 836 standard. (*People v. Ghebretensae* (2013) 222 Cal.App.4th

8.

741, 750.) Frantz claimed at trial that the stabbing of Melrose was accidental or self-defense. Prior to trial, however, Frantz made inculpatory statements to officers. Frantz admitted to Officer Phebus that he took the knife from the thrift store after leaving the fire station. Frantz told Officer Cancio he was "only trying to scare him, not kill him" and admitted he "did it" to Melrose. In addition, Frantz acknowledged before the jury that Smith's testimony did not conflict with his own testimony. It is highly unlikely the jurors would have found Smith's testimony less credible, in light of Frantz's admissions.

## DISPOSITION

The judgment is affirmed.