Filed 11/6/20  P. v. Novak CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HOWARD THEODORE NOVAK,<br><br>    Defendant and Appellant. | 2d Crim. No. B299217<br>(Super. Ct. No. 2016029090)<br>(Ventura County) |

Howard Theodore Novak appeals from the judgment after a jury found him guilty of voluntary manslaughter (Pen. Code,[1] § 192, subd. (a)).[2]  The jury also found true the allegation that he used a deadly and dangerous weapon.  (§ 12022, subd.

---

[1] Further unspecified statutory references are to the Penal Code.

[2] The jury found him not guilty of the greater offenses of first and second degree murder.  (§§ 187, subd. (a), 189, subds. (a), (b).)

(b)(1).)  The trial court sentenced Novak to a state prison term of 12 years, which consisted of the upper term of 11 years for voluntary manslaughter plus one year for the enhancement.

Novak contends the trial court erred when it (1) admitted a video of his police interview, and (2) sentenced him to the upper term.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY
### *Prosecution Evidence*

Novak was married to his wife, Patti,[3] for 13 years.  They lived together with her adult son, K.H.

Novak kept many weapons in the house including guns, metal batons, and knives.  He kept a machete next to the front door.  Novak possessed several knives and would often have one clipped to his pants even when he was at home.  Novak practiced self-defense moves with a knife in front of a mirror.

K.H. often argued with Novak and Patti.  Sometimes the arguments between Novak and K.H. became physical.  On one occasion, K.H. pulled out a kitchen knife and told Novak, "I'm tired of you poking at me and making fun of me.  And every time you see me, you criticize me."  Novak responded, "You couldn't hurt me if you tried."  Patti intervened and K.H. put the knife away.

Novak told Patti that he "feare[d] that one day [K.H. would] lose his temper too much and that he might hurt him."  Novak said he would have to defend himself if K.H. tried to hurt him.  Novak asked Patti to write a note which stated:  "Should [K.H.] harm Howard Novak, Howard may file charges as needed."

---

[3] Patti suffered from cancer and died prior to trial.  The jury was presented with a video of her testimony.

Novak also put surveillance cameras inside the house for "[p]rotection in case of intrusions or disagreements in the family."

On the night of the incident, Novak and K.H. got into an argument. Novak stabbed K.H. twice with a knife—once in the upper abdomen and once in the chest. K.H. died. Novak called 911 and said he stabbed K.H. He explained that he was talking to K.H. about doing his chores when K.H. "shoved [him] up against the wall."

Police officers arrived at the home and arrested Novak. One of the officers searched Novak and found a "kubaton" (a pen-sized weapon designed to hit pressure-points on the body). The police found the folding knife used to kill K.H. on a shelf inside the home. The police also found a sheathed machete on a shelf next to the front door and a "push knife" (a T-shaped carbon fiber knife that is roughly four inches in length) inside Novak's wallet.

Novak told an officer that K.H. punched him in the chest and jaw. However, when the officer checked to see if Novak had injuries, there was "no evidence of traumatic injury to either of those spots." Photographs of Novak's face and chest also showed no injuries.

Police detective Dan Swanson interviewed Novak twice. During the first interview, Novak said that K.H. had knocked him to the ground, threatened to "cut [him] in half" with a machete, and then walked towards the machete. Novak said that K.H. continued to move toward the machete when Novak took out his knife, so he stabbed K.H. Novak said that K.H. "continued to go to the machete," so he stabbed him a second time.

3

Swanson obtained the surveillance video from inside Novak's home. The video captured both stabbings. During a second interview, Swanson and Novak watched the surveillance video together. Recordings of the surveillance video and the second interview were played for the jury.

### Defense Evidence

Novak testified that there were several instances when K.H. would get physical with him, and a few instances when K.H. pushed Patti. He recalled an instance when K.H. threatened to burn down the house with Novak and Patti in it.

On the night of the incident, Novak knocked on K.H.'s door. K.H. opened the door, hit Novak, and shoved him against a wall. K.H. then hit Novak on the jaw, causing him to fall to the ground. K.H. told Novak, "I'm going to kill you," and "I'm going to cut you in half with your own machete." Novak said K.H. moved towards the front door, where the machete was located. Novak then stabbed K.H. in the abdomen to "try to fire a warning shot." When K.H. tried to grab the knife, Novak stabbed K.H. a second time in the chest.

Novak's friends also testified that Novak was afraid of K.H. and said that there were instances when K.H. hit Novak.

## DISCUSSION

### Video of Swanson's Interview of Novak

After the presentation of the defense evidence, the prosecution sought to introduce rebuttal evidence in the form of the video of Swanson's second interview of Novak, in which they watched the surveillance footage together. During the interview, Novak made inculpatory statements including as follows:

> "[Swanson]: And it looks like the knife is in your hand.

4

"[Novak]:  Yes I see it there.

"[Swanson]:  Okay.  So that's, that'd be your right hand?

"[Novak]:  Correct.

"[Swanson]:  Taking a swing.  It looks like he's facing you now.  His back's towards the front door.  Is that correct?

"[Novak]:  Correct.  That's right.  And he was . . . .

"[Swanson]:  And his hands are out in front of him.

"[Novak]: Yeah.

[¶] . . . [¶]

"[Swanson]: . . . What I am concerned about, though, is what that video shows is different than your actual statement in terms of distance and timing and his physical motion, and more importantly, . . . what that video shows me is the entire time that you two were on video and engaged, and we know that you are armed with a knife, you are aggressing him, you're going after him, and he is attempting to defend himself.  And that is a vastly different version of events than you explained.  Your mindset notwithstanding, the words he said notwithstanding, that is not a man who is trying desperately to get a

5

machete or is going to come get you. This is a man who is defending himself against being stabbed. That's what that video shows me, both of those. And if you disagree with me—and it's not about the words he said. . . I'll just accept [¶] . . . [¶] that he said them. Do you see something different than him defending himself against your strikes?

"[Novak]: No, I see him defending."

The trial court admitted the video evidence. In so doing, it stated, "I will certainly give an admonition to the jury that they're being provided this information to consider Mr. Novak's statements, not to consider Detective Swanson's opinions . . . [¶] . . . But I also know that Detective Swanson testified pretty clearly that he made statements in this case . . . in a way to sort of jar conversations and see how people react." The court reasoned that Swanson's statements "contextualizes whatever the answer was. I'm not allowing Detective Swanson through a *Miranda* interview to testify as an expert witness and give the jury evidence of his theory of the case because that's not permissible." (Italics added.)

Before the prosecution played the video of the interview, the trial court instructed the jury that "whatever the attorneys say is not evidence. Their questions are important only if they help you understand the witness['s] answers, because it's the witness['s] answers that are evidence. The same [principle] holds true for the *Miranda* interviews, because what the detectives say isn't necessarily evidence. The detectives'

6

questions are important only to contextualize what the answer that the person being questioned is giving." (Italics added.)

### *Analysis*

Novak contends the trial court erred when it admitted the video. He contends that because the "majority of the dialogue is Detective Swanson telling appellant his opinion that appellant was the aggressor and [K.H.] was defending himself," the video contains inadmissible opinion evidence that must be excluded. We review the court's ruling on the admissibility of evidence for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 725.)

The trial court did not abuse its discretion. An interviewer's questions and statements are admissible for the purpose of giving context to the interviewee's responses. (See *People v. Maciel* (2013) 57 Cal.4th 482, 524 [officer's questions and statements during a recorded interview were properly admitted to give context to the defendant's responses].) Here, the trial court did not admit Swanson's statements as opinion testimony, but rather, it properly admitted them because they "contextualize[] whatever the answer was." Novak admitted that K.H.'s back was to the machete after being stabbed the first time and that K.H. was defending himself. Without Swanson's questions and statements, these admissions alone would not have made sense. (*Ibid.*)

Moreover, the trial court instructed the jury that it could not consider Swanson's questions and statements as evidence. The court admonished that the "detectives' questions are important only to contextualize what the answer that the person being questioned is giving." (See *People v. Turner* (1994) 8 Cal.4th 137, 190 [statements properly admitted where they gave

7

context to the defendant's admission and the jury was instructed of the limited purpose], abrogated on other grounds by *People v. Griffin* (2004) 33 Cal.4th 536.) We presume the jury followed the court's instruction. (*Turner*, *supra*, at p. 190.) There was no error.

### *Sentencing*

Novak contends the trial court erred when it sentenced him to the upper term of 11 years. This contention lacks merit.

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, subd. (b).) "In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports . . . and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (*Ibid.*) "The court shall set forth on the record the reasons for imposing the term selected." (*Ibid.*)

We review a trial court's sentencing decision for abuse of discretion. (§ 1170, subd. (b); *People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*).) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' [Citation.]" (*Ibid.*) A trial court abuses its discretion if "it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid.*)

8

The trial court did not abuse its discretion when it imposed the upper term. The court identified two aggravating factors: (1) there was an "unusual amount of high degree of cruelty and viciousness in this case"; and (2) Novak posed an "unreasonable risk to society." A "high degree of cruelty, viciousness, or callousness" of the criminal act and a defendant's engagement "in violent conduct that indicates a serious danger to society" are both relevant aggravating factors that a trial court may consider when sentencing. (Cal. Rules of Court, rule 4.421(a)(1), (b)(1).) The court found these two factors "outweigh[ed] any factors in mitigation," including Novak's lack of a prior record.

Novak contends the trial court abused its discretion because it improperly considered his lack of remorse as an aggravating factor. He argues that the court "bootstrapp[ed] an improper factor (lack of remorse) onto a proper one" (unreasonable risk to society). Although the court stated that Novak "would pose an unreasonable risk to society if [the court] was to release him" because of his lack of "insight into his own behavior," this was not the only basis for the court's finding. The court also noted its own observation of Novak's action from the surveillance video, Novak's intent to kill, and the fact that he "stashed" deadly weapons around the house and in his pockets "at all times."

But even if we assume the court erred in considering Novak's lack of remorse, the trial court also identified the high degree of cruelty and viciousness of the offense as an aggravating factor. The "finding of even one factor in aggravation is sufficient to justify the upper term." (*People v. Steele* (2000) 83 Cal.App.4th 212, 226.)

9

Finally, Novak contends the jury's verdict did not support the finding that his acts were committed with a high degree of cruelty and viciousness. (*Sandoval, supra*, 41 Cal.4th at p. 838.) We disagree. The court found that given "the unusual amount of high degree of cruelty and viciousness in this case, this was more than self-defense. This was him trying to kill [K.H.]. And I don't think that that was necessary under the circumstances." The verdict is consistent with this finding—the jury found that Novak unreasonably believed that deadly force was necessary when it found him guilty of voluntary manslaughter. There was thus no abuse of discretion.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.

We concur:



GILBERT, P. J.



PERREN, J.

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.