[No. B134069. Second Dist., Div. Two. Aug. 22, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
TOM STEELE, JR., Defendant and Appellant.

**COUNSEL**

Jerald W. Newton, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Gary W. Schons, Laura Whitcomb Halgren and Steven T. Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NOTT, J.**—From 1911 to 1965, at least four published appellate court decisions decided that brandishing a firearm was not a lesser included

offense to assault with a deadly weapon (firearm).[1] Without discussion, our Supreme Court in 1967 ignored those cases and impliedly held the reverse. (*People v. Wilson* (1967) 66 Cal.2d 749, 764 [59 Cal.Rptr. 156, 427 P.2d 820] (*Wilson*).)

In a steady parade of subsequent cases, the appellate courts got even by disregarding that particular holding of *Wilson*. For the reasons that follow, we respectfully join the parade.

### PROCEDURAL BACKGROUND

Appellant Tom Steele, Jr., appeals from a judgment entered after a jury found him guilty of assault with a firearm (count 1; Pen. Code, § 245, subd. (a)(2)), and possession of a firearm by a felon (count 2; Pen. Code, § 12021, subd. (a)(1)). The jury also found that in the commission of the assault, appellant personally used a firearm (Pen. Code, § 12022.5, subd. (a)(1)).[2]

The trial court sentenced appellant to 14 years, consisting of the high term of four years for count 1 and a 10-year enhancement for the use of a firearm. The sentence on count 2 was stayed.

### CONTENTIONS

Appellant contends that (1) he was denied his right to a jury trial and due process of law when the court refused to instruct the jury on the lesser included offense of brandishing a firearm, (2) his convictions must be reversed because he was denied his right to confront and cross-examine the main prosecution witness, and (3) the court abused its discretion in imposing the high terms for assault with a firearm and for using a firearm.

### FACTS

Rosalind Williams has been a prostitute for 20 years. She has also been convicted of voluntary manslaughter. On December 4, 1998, she was "working" on the corner of 90th and Figueroa Streets in South Central Los Angeles. Around midnight, appellant drove by and summoned Williams by

---

[1]Until 1982, Penal Code section 245 addressed "deadly weapons" in general, with no reference to firearms. In 1982, the section was amended to specify assault with a firearm as a discrete offense. Inasmuch as all of the relevant cases cited herein deal with firearm use, we will from here on out use the term "assault with a firearm" even though in the cases applying the pre-1982 law, the technically correct wording should be "assault with a deadly weapon (firearm)."

[2]Except as stated in part III., all statutory references are to the Penal Code.

name[3] to his car where he inquired about a "date." Williams agreed to a date with appellant and had him follow her home because she refused to have the date in his car. Upon reaching Williams's home, they agreed to a fee of $40, of which appellant paid Williams $20.

Williams and appellant then left the Williams home. After appellant got change for a $100 bill, he paid Williams the remaining $20 and drove her to the house he shared with his mother and father. Appellant took Williams into his bedroom, where the two engaged in intercourse. Appellant was unable to ejaculate, and demanded the return of his money. Williams returned the $20 she had on her person.[4] Appellant got dressed and said, "Look, you in my bedroom. You're in my house. If I wanted to do something towards you, I'm going to show you something." Appellant then unlocked his closet door and pulled out a shotgun, which was wrapped in a pillowcase. Taking the shotgun with him, he drove Williams home so that he could recover the other $20.

Upon arriving at Williams's home, appellant removed the shotgun from the pillowcase and told her to retrieve his $20. At that time, appellant was standing beside the driver's door with the shotgun pointing at Williams. He threatened to shoot her if she didn't quickly return with the money. He also threatened to "shoot up" the apartment building where Williams lived. Finally, appellant said he would shoot Williams if she reported the matter to the police.

Williams was unable to enter her home because it was locked and she had left the key with a friend. Appellant instructed Williams to return to the car. He drove her to a nearby elementary school and parked. Appellant ordered Williams to take down her pants. She did, and the two had sex in the car. When he finished, appellant ordered Williams out of the car and drove off.

After obtaining the key to her apartment, Williams walked home and called the police. She showed the police where appellant lived, and identified him. Appellant was arrested and admonished regarding his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974]), which he waived. Appellant stated that he told Williams he was bringing the shotgun along for protection because it was late at night, and she lived in gang territory. At trial, appellant admitted he got the shotgun out, after which Williams gave him the $20 back and also agreed to give him the other $20 back because she could see that he "had her covered."

---

[3]Appellant did not know Williams's real name and addressed her by her street name, "Little Bit."

[4]Apparently, Williams had left the first $20 at home when she received it.

During the course of the proceedings, the trial court granted the prosecution's motion to prevent the defense from impeaching Williams with evidence of her prior misdemeanor convictions. Further, defense counsel requested that the court instruct on the misdemeanor offense of brandishing a firearm (§ 417, subd. (a)(2))[5] as a necessarily included offense to the section 245 charge. Counsel's request was denied. As previously stated, appellant was found guilty on both counts.

## DISCUSSION

### I. *The trial court correctly refused to instruct on the misdemeanor offense of brandishing a firearm*

The information charged appellant with committing assault with a firearm (shotgun). Appellant contends the trial court erred when it refused his request to instruct the jury on the lesser offense of brandishing a firearm.

■ A trial court is required to instruct on any lesser included offenses that are supported by the evidence. (*People v. Barton* (1995) 12 Cal.4th 186, 194-195 [47 Cal.Rptr.2d 569, 906 P.2d 531].) An offense is lesser included to a greater offense if the greater offense cannot be committed without also committing the lesser offense. (*People v. Birks* (1998) 19 Cal.4th 108, 117 [77 Cal.Rptr.2d 848, 960 P.2d 1073] (*Birks*); *People v. Lohbauer* (1981) 29 Cal.3d 364, 368-369 [173 Cal.Rptr. 453, 627 P.2d 183].) The trial court, however, is not required to instruct on lesser related offenses.

In *Birks*, our Supreme Court disapproved *People v. Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055] (*Geiger*). *Geiger* had held that, in certain situations, the defendant had a right to request instructions on offenses that were related to the greater offense. *Birks* decided that the one-way street in favor of the defense was unsupportable, and overruled *Geiger*. As a result, a trial court is no longer able to instruct on lesser related offenses, absent the stipulation of both parties, or a party's failure to object to such an instruction. (*Birks, supra*, 19 Cal.4th at p. 136, fn. 19.)

The determination of whether an offense is lesser included is made from either the wording of the information or the statutory language, and not from the evidence adduced at trial. (*Birks, supra*, 19 Cal.4th at p. 117; *In re Hess*

---

[5]"Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor, punishable by imprisonment in a county jail for not less than three months. . . ." (§ 417, subd. (a)(2).)

(1955) 45 Cal.2d 171, 174-175 [288 P.2d 5]; *People v. St. Martin* (1970) 1 Cal.3d 524, 536 [83 Cal.Rptr. 166, 463 P.2d 390]; *People v. Wright* (1996) 52 Cal.App.4th 203, 208 [59 Cal.Rptr.2d 316].) "It is of no consequence that the evidence at trial might also establish guilt of another and lesser crime than that charged. To constitute a lesser and necessarily included offense it must be of such a nature that as a matter of law and *considered in the abstract* the greater crime cannot be committed without necessarily committing the other offense. (*People v. Preston* [(1973)] 9 Cal.3d 308, 319 [107 Cal.Rptr. 300, 508 P.2d 300]; *People v. Escarcega* [(1974)] 43 Cal.App.3d 391, 396-397 [117 Cal.Rptr. 595].)" (*People v. Benjamin* (1975) 52 Cal.App.3d 63, 71 [124 Cal.Rptr. 799], original italics.)

■ Appellant argues that brandishing is a lesser included offense of assault with a firearm. We disagree. Even though most assaults with a firearm undoubtedly include conduct fitting into the definition of brandishing, it has long been held that brandishing is a lesser related offense, rather than lesser included. (*People v. Piercy* (1911) 16 Cal.App. 13, 16 [116 P. 322]; *People v. Diamond* (1939) 33 Cal.App.2d 518, 522-523 [92 P.2d 486]; *People v. Torres* (1957) 151 Cal.App.2d 542, 544-545 [312 P.2d 9] (*Torres*); *People v. Leech* (1965) 232 Cal.App.2d 397, 399 [42 Cal.Rptr. 745]; *People v. Birch* (1969) 3 Cal.App.3d 167, 176 [83 Cal.Rptr. 98]; *People v. Orr* (1974) 43 Cal.App.3d 666, 673 [117 Cal.Rptr. 738]; *People v. Beach* (1983) 147 Cal.App.3d 612, 626 [195 Cal.Rptr. 381]; *People v. Lipscomb* (1993) 17 Cal.App.4th 564, 569 [21 Cal.Rptr.2d 445] [treating brandishing as a lesser *related* offense to assault with a firearm].)[6] The reason of course, is that it is theoretically possible to assault someone with a firearm without exhibiting the firearm in a rude, angry or threatening manner, e.g., firing or pointing it from concealment, or behind the victim's back. (*People v. Escarcega, supra,* 43 Cal.App.3d 391, 398 (*Escarcega*).)

In the present matter, neither the information nor the statutory wording of section 245, subdivision (a)(2) contains any language that fits within the definition of section 417. Accordingly, both sides went to trial prepared to prosecute and defend only on either the charge of assault with a firearm or any lesser included offenses thereto. As previously explained, brandishing is not such an offense. The trial court therefore did not err in failing to give the

---

[6]*People v. Rasher* (1970) 3 Cal.App.3d 798 [83 Cal.Rptr. 724] involved a situation where the defendant was charged with assault with a deadly weapon. Prior to trial, the defendant requested jury instructions on brandishing. After trial, for tactical reasons, the defendant tried to withdraw them. The trial court refused, and was affirmed on appeal. The appellate panel noted the *Torres* decision holding that brandishing was not a lesser included offense to assault with a deadly weapon. However, the court stated that such issue was not before it, and so made no comment whether it agreed or disagreed with *Torres*. (*Rasher, supra,* at p. 800.) In footnote 3 on the same page, the court acknowledged the existence of *Wilson*.

instruction requested by appellant. However, despite the list of at least nine published appellate court decisions—none of which have been overruled or depublished—stating that brandishing was not a lesser included offense to assault with a firearm, we cannot end the discussion here. The reason is *Wilson*.

*Wilson* involved the slaying by the defendant of his wife and a man, and the assault with a firearm upon two other men. As to the murder victims, the Supreme Court held that under the defense evidence, it was error not to give a brandishing instruction sua sponte as a predicate for the jury to possibly find the defendant guilty of misdemeanor manslaughter. As discussed, *post*, that part of the opinion is not relevant to the present appeal. What is relevant is the Supreme Court's holding as to one of the assault victims, Champion. The issue there related to whether the trial court erred in not sua sponte instructing on brandishing as a lesser offense to the assault on Champion.

The entire discussion by the Supreme Court on the issue is: "This [the trial court's correctness in not giving an instruction on unconsciousness as to the assault charges] does not mean, however, that the judgment of conviction for assault with a deadly weapon upon Champion can be permitted to stand. That judgment of conviction must be reversed for failure to instruct on [Penal Code] section 417. 'An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' (Pen. Code, § 240.) Defendant did not shoot or strike Champion; had the jury been instructed on [Penal Code] section 417 the evidence would have justified the conclusion that defendant committed a violation of that section rather than the assault found. (*People* v. *Carmen* [(1951)] 36 Cal.2d 768, 774-775 [228 P.2d 281].) Under the rules set forth above [that a trial court has the sua sponte duty to instruct on the general principles of law raised by the evidence], the error must be deemed prejudicial." (*Wilson, supra*, 66 Cal.2d at p. 764.)

Thus, the Supreme Court implied—but did not directly hold—that brandishing was a lesser included offense to assault with a firearm. That holding has no prior case support, and only scant subsequent support.

*People v. Carmen, supra*, 36 Cal.2d 768 (*Carmen*), cited as authority by *Wilson*, did not state that brandishing was a lesser included offense to assault with a firearm. Instead, *Carmen* reiterated the rule that the trial court had the obligation to instruct on any included offense that is shown within the evidence. (*Carmen, supra*, at p. 773.) The Supreme Court noted that the defendant's conduct might be viewed by the trier of fact to fit within section 417 as a predicate for the trial court to give a manslaughter instruction. (*Carmen, supra*, at p. 775.)

Two months after *Wilson*, the Supreme Court issued *People v. Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15] (*Coffey*). On page 222 at footnote 21, the court said, "The jury herein was properly instructed that section 417 sets forth a lesser offense necessarily included in those charged [which included assault with a firearm]. (Cf. *People* v. *Wilson*[, *supra*,] 66 Cal.2d 749, 757-761 . . . .)" We note however, that *Coffey* does not cite to page 764 of *Wilson*, which is where one finds the implied pronouncement that brandishing is a lesser offense to assault with a firearm.

In contrast, appellate court cases subsequent to 1967 either did not cite or follow *Wilson* on the instant subject. The most outspoken of the opinions is *Escarcega*. In that case, 43 Cal.App.3d at pages 399-400, the appellate court did not follow *Wilson* for the following reasons:

a. The Supreme Court did not specifically state that brandishing was a lesser included offense to assault with a firearm.

b. The court did not discuss the rationale behind lesser included offenses.

c. The court did not overrule the prior published appellate court decisions holding that brandishing was *not* a lesser included offense to assault with a firearm.

d. After publication of *Wilson*, the Supreme Court has consistently reaffirmed the principle that a lesser and necessarily included offense is one that *must* be committed in order to commit the greater offense. (The *Escarcega* court noted that it was possible to commit an assault with a firearm without brandishing it, therefore brandishing cannot be a lesser included offense to such an assault.)

e. *Wilson* is not supported by any prior or subsequent cases, as *Carmen* did not so hold, and the footnote statement in *Coffey* is not binding authority.

An intermediate appellate court is required to follow the holdings of the Supreme Court. (*Auto Equity Sales v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937] (*Auto Equity*).) However, we are reluctant to do so here. If content with the rule it devised in *Wilson*, the Supreme Court would have either taken review of *Escarcega*, or at least ordered that case depublished. That the Supreme Court did not do so, and in fact has not done so relative to at least five subsequently published appellate decisions, strongly implies that the logically unsupportable statements in *Wilson* and *Coffey* (that brandishing is a lesser included offense to assault with a firearm) are simply aberrations.

However, the Supreme Court has stated that its "refusal to grant a hearing in a particular case is to be given *no* weight insofar as it might be deemed that we have acquiesced in the law as enunciated in a published opinion of a Court of Appeal when such opinion is in conflict with the law as stated by this court." (*People v. Triggs* (1973) 8 Cal.3d 884, 890 [106 Cal.Rptr. 408, 506 P.2d 232], original italics.)

We are therefore caught in a dilemma. To not follow *Wilson* might appear to put us at odds with the *Auto Equity* rule requiring that we follow the holdings of the Supreme Court. On the other hand, to follow *Wilson* means that we would have to ignore almost a century of established law. We respectfully opt for the former. In doing so, we especially note that in *Wilson*, the Supreme Court failed to follow its own rule, i.e., that the determination of whether an offense is lesser included is made from the language of the statute or the information, and not from the evidence adduced at trial. (*In re Hess, supra*, 45 Cal.2d at pp. 174-175.) Except for *Wilson*, that rule has continued unabated, and in 1998 was affirmed in by the Supreme Court in *Birks, supra*, 19 Cal.4th at page 117. When that rule is applied here, the conclusion is inescapable that an assault with a firearm may be committed without the defendant brandishing such weapon. Ergo, under the Supreme Court's own rule of analysis, as recently affirmed in *Birks*, brandishing cannot be a lesser included offense to assault with a firearm.

*People v. Lee* (1999) 20 Cal.4th 47 [82 Cal.Rptr.2d 625, 971 P.2d 1001] (*Lee*) does not compel an opposite result. In that case, the defendant was charged with murder by use of a firearm. Like *Wilson*, there was evidence that the defendant meant only to frighten the victims. In both *Lee* and *Wilson*, our Supreme Court held that it was error for the trial court not to have instructed on section 417 as a predicate for the "misdemeanor manslaughter" theory of involuntary manslaughter, a lesser included offense to murder. (*Wilson, supra*, 66 Cal.2d at pp. 759-760; *Lee, supra*, at p. 61.) However, in the noncapital case before us, an instruction under section 417 was not being requested as a predicate in order to justify instructing on a different lesser included offense. Rather, the instruction was being sought as the basis for conviction under section 417 itself.

We conclude that the trial court did not err in refusing to instruct on section 417.

II. *The right to confront and cross-examine Williams*

■ Appellant challenges the trial court's refusal to allow him to cross-examine Williams on her prior misdemeanor conviction for providing false

information to a police officer during an arrest for prostitution. According to appellant, he should have been allowed to cross-examine Williams regarding the conduct underlying that conviction, and by preventing him from doing so, the trial court violated his Sixth Amendment right to confrontation and cross-examination. We agree that appellant should have been allowed to cross-examine Williams at trial on that subject. However, we conclude the error was harmless.

## A.  *Error by denying right of confrontation on cross-examination*

In *People v. Wheeler* (1992) 4 Cal.4th 284 [14 Cal.Rptr.2d 418, 841 P.2d 938] (*Wheeler*), the Supreme Court considered what could be used as impeachment under article I, section 28, subdivision (d) of the California Constitution.[7] The *Wheeler* court concluded that, subject to trial court discretion, any felony could be used for impeachment, as could a misdemeanor involving moral turpitude. (*Wheeler, supra,* at p. 296.) The Supreme Court emphasized that the underlying conduct of the witness should be used for impeachment; thus, a witness could admit the conduct or other witnesses could be called to describe the conduct. (*Id.* at pp. 284, 300, fn. 14.)

Under *Wheeler*, Williams could be asked if she provided false information to a peace officer and the peace officer, or anyone Williams admitted such conduct to, could be called as a witness if she were to deny the conduct. The trial court refused to allow appellant to make this inquiry of Williams due to the prosecution's argument that counsel could not do so without a good faith belief, i.e., testimony from the officer to whom Williams had lied or someone to whom Williams had admitted the conduct. Upon a denial by Williams, appellant was prepared to impeach the witness by producing her rap sheet, which the trial court would not allow because it was determined to be inadmissible hearsay.[8] At trial, the district attorney stated that Williams admitted the conduct and would most likely not lie about the incident.

---

[7]Article I, section 28, subdivision (d) of the California Constitution states: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press."

[8]Appellant now relies on *People v. Martinez* (2000) 22 Cal.4th 106 [91 Cal.Rptr.2d 687, 990 P.2d 563] (*Martinez*), a case decided well after appellant's trial, for its proposition that a rap sheet meets the official records exception to the hearsay rule. *Martinez* is distinguishable from the present case for several reasons. Most importantly, the computer printout in *Martinez* was used to establish the existence of prior convictions for the purpose of sentence enhancement. Furthermore, the court limited its decision to the record of the case. (*Id.* at p. 111.)

However, the district attorney argued that because appellant could not provide evidence of the misdemeanor conduct, he could not even question Williams regarding her misdemeanor conviction.

*Wheeler* does not state that appellant cannot examine the witness regarding the prior. Instead, *Wheeler* states that where a witness denies having committed a misdemeanor consisting of moral turpitude, he or she may only be impeached by evidence of the underlying conduct of that misdemeanor. (*Wheeler, supra,* 4 Cal.4th at p. 300, fn. 14.) The present case is not a situation where an attorney is attempting to assassinate the credibility of a witness through unfounded innuendo. By virtue of the rap sheet and the district attorney's statement that Williams admitted the conduct, appellant had a good faith belief that Williams had a prior conviction for giving false information to a police officer. Appellant thus had the right to question Williams on that subject, even though he may not have had evidence to controvert a denial by her.

For the aforementioned reasons, it was error for the trial court to not allow appellant's desired cross-examination of Williams. We now turn to an analysis of whether that error requires reversal.

### B. *Harmless error*

In arguing the trial court violated his Sixth Amendment rights, appellant relies on *Davis v. Alaska* (1974) 415 U.S. 308 [94 S.Ct. 1105, 39 L.Ed.2d 347]. In *Davis*, a prosecution witness testified that he saw the defendant standing at a remote location where the safe from a burglary was subsequently discovered. (*Id.* at pp. 309-310 [94 S.Ct. at p. 1107].) Both at the time he saw the defendant and at the time of trial, the witness was on probation by order of a juvenile court after having been adjudicated a delinquent for burglarizing two cabins. The prosecution sought to prevent any reference to the witness's criminal record by the defense. The trial court granted a protective order preventing the defendant from impeaching the witness with his probationary status. (*Id.* at pp. 310-311 [94 S.Ct. at pp. 1107-1108].) The Supreme Court found the ruling violated the confrontation

Also, the computer printout presented was accompanied by a stamp from the Kern County District Attorney's Office with the following statement: " ' "This is to certify that the above is a true and original document received from the California Law Enforcement Telecommunications System, by the District Attorney's Discovery Unit." ' " (*Id.* at p. 115.) Finally, not only was the document accompanied by testimony from the paralegal in the district attorney's office that generated the printout, it was also accompanied by testimony from a Los Angeles County deputy sheriff who had questioned the defendant about his criminal history and to whom the defendant had made admissions consistent with the computer printout. (*Id.* at p. 131.)

clause. The court reasoned that as a result of the limitation on cross-examination, the defendant was unable to show that the witness was biased, that he identified the defendant either to shift suspicion away from himself, or because of fear that the police would otherwise revoke his probation. (*Id.* at pp. 310-311, 317-318 [94 S.Ct. at p. 1107-1108, 1110-1111].)

*Davis* is clearly distinguishable on its facts from the present case. Here, Williams admitted to a conviction of voluntary manslaughter and 20 years of experience as a prostitute. The jury's knowledge of Williams's extensive career as a prostitute and her conviction for voluntary manslaughter was sufficient evidence by which the jury could question her veracity. The fact that during her lengthy career she had once given false information to the police would likely surprise no one. In contrast, the witness's status in *Davis* was extremely probative and the defense's inability to cross-examine the witness denied essential information to the jury, which resulted in a miscarriage of justice.

■ Appellant claims the denial of his right to fully cross-examine Williams mandates a reversal. However, according to *People v. Frye* (1998) 18 Cal.4th 894, 946 [77 Cal.Rptr.2d 25, 959 P.2d 183], "not every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance." The court concluded, "unless the defendant can show that the prohibited cross-examination would have produced 'a significantly different impression of [the witnesses'] credibility' [citation], the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment." (*Frye, supra,* at p. 946, quoting *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 680 [106 S.Ct. 1431, 1435-1436, 89 L.Ed.2d 674].)

Further, under California law, a judgment should not be set aside unless, after examining the entire cause, an error has resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.)[9] In *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], the applicable test for determining the existence of a miscarriage of justice was stated as follows: "That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably

---

[9]California Constitution, article VI, section 13 states: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

probable that a result more favorable to the appealing party would have been reached in the absence of the error."

Because the jury was informed of Williams's 20-year career as a prostitute and her prior conviction for voluntary manslaughter, and because of appellant's testimony regarding the shotgun that he had Williams "covered" at the time he asked for his money back, it is not reasonably probable that a result more favorable to appellant would have been reached if Williams's single conviction for providing false information to a peace officer had been presented to the jury. Therefore, the trial court's error was harmless and does not require reversal.

## III. *The sentence*

In determining the appropriate sentence to select for a particular defendant, California Rules of Court, rule 420,[10] requires the trial court to weigh factors in aggravation or mitigation. If the factors balance evenly, the middle term is to be selected. If the factors in aggravation outweigh those in mitigation, the upper term is appropriate. If the factors in mitigation outweigh those in aggravation, the converse is true.

The factors in aggravation or in mitigation are to be established by a preponderance of the evidence. (Rule 420(b).) If the trial court selects the high term for a sentence on a crime or an enhancement, it is required to state the reasons on the record. (Rules 420(e), 428(b).) A nonexhaustive list of factors in aggravation is provided in rule 421.

Prior to sentencing, a probation report was received by the trial court. The report listed as aggravating factors: the threat of great bodily harm; planning and sophistication; the increasing seriousness of appellant's criminal behavior; and the fact appellant was on probation for a similar crime.[11] The recommendation was for the high term.

Also, the prosecution provided the trial court and the defense with a sentencing memorandum listing seven aggravating factors and no factors in mitigation. In addition to the four factors mentioned above, the prosecution

---

[10]All further rules references are to the California Rules of Court.

[11]Appellant evidently assaulted his mother with a flashlight, and received some time in county jail and was then placed on summary probation.

argued that: the victim was particularly vulnerable; by his conduct appellant is a danger to society; and appellant was armed.[12]

The trial court continued the sentencing hearing several times so that appellant could receive a psychiatric evaluation. The report from Dr. Sharma, although noting some mental deficiencies, concluded that appellant was competent.

Appellant did not object to any of the potential aggravating factors proposed by the prosecution or the probation department. The trial court concluded that there were no mitigating factors. The court found aggravating factors that included appellant being a felon who was armed, the threat of great bodily injury to Williams, the threat to shoot into the apartment building, the vulnerability of Williams, the planning and sophistication of the crime, and the threat appellant constitutes to society. The trial court imposed the high term for the assault charge. Thereafter, citing the same factors, the court imposed the high term for the gun use.

■ Appellant takes exception to each factor found by the trial court. Unfortunately, he is too late. Any such objection should have been made at the sentencing hearing, and the failure to do so waives the issue on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 348 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) Prior to sentencing, appellant was made aware of the potential factors in aggravation supplied by the probation department and the district attorney, and did not object either before or after pronouncement of sentence, despite the opportunity to do so.

In any event, appellant's various arguments fail on the merits. The trial court was entitled to rely on Dr. Sharma's report and the court's own observations of appellant during the trial to reject a mitigating factor of mental illness. (Rule 423(b)(2).) Further, the finding of even one factor in aggravation is sufficient to justify the upper term. (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433-434 [45 Cal.Rptr.2d 148].). In the present case, the evidence supported the factors that the trial court found to be in aggravation. Even if some of the factors were impermissible, it is difficult to assail the finding that the victim was vulnerable. (Rule 421(a)(3).) Williams testified she was afraid of appellant by his actions and past reputation, and also by the fact that appellant knew where she lived. Even though she was a prostitute and possibly used to dealing with potentially dangerous situations, the trial court's acceptance of her testimony regarding her fear and vulnerability was not unreasonable.

---

[12]The fact that appellant was armed is inappropriate as a factor in aggravation, as it is an element of the crime, and is also the subject of an enhancement that was imposed. (Rule 420(c), (d).)

Any one of the remaining factors in aggravation would support the high term for the gun use. In particular, the trial court was entitled to believe that appellant's threat to shoot up the apartment building constituted a danger of great bodily harm to persons other than Williams. (Rule 421(a)(1).) Further, the trial court could have used as a reason, but did not, the fact that appellant was on probation at the time of this incident. (Rule 421(b)(4).) While reasonable minds might differ as to whether imposition of the high terms for both the crime and the enhancement was appropriate under these facts, there were sufficient aggravating factors on which to support the trial court's decision.[13]

## DISPOSITION

The judgment is affirmed.

Boren, P. J., and Mallano, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied December 13, 2000. Kennard, J., was of the opinion that the petition should be granted.

---

[13]We also note that appellant was perhaps fortunate that (in ordering Williams back into his car and compelling her to have intercourse) he was not charged with kidnapping and/or rape.

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.