Filed 4/24/25  P. v. Romero CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D082917 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD297191) |
| JONATHAN ROMERO, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Jonathan Romero appeals a judgment following his jury conviction of assault with a semiautomatic firearm (Pen. Code,[1] § 245, subd. (b)), possession of a controlled substance, methamphetamine, while possessing a loaded, operable firearm (Health & Saf. Code, § 11370.1, subd. (a)), felon in possession of a firearm (§ 29800, subd. (a)(1)), and felon in possession of ammunition (§ 30305, subd. (a)(1)). The jury found true that Romero personally used a firearm, a handgun, within the meaning of section 12022.5, subdivision (a), and section 1192.7, subdivision (c)(8), in the commission of assault with a semiautomatic firearm. The jury also found true that Romero was armed with a deadly weapon within the meaning of section 667, subdivision (e)(2)(C)(iii), and section 1170.12, subdivision (c)(2)(C)(iii), in the commission of being a felon in possession of a firearm. The trial court sentenced Romero to a total of 17 years.

On appeal, Romero contends the trial court erred when it referred the jury to CALCRIM No. 875[2] in response to its questions during deliberation because the instruction did not answer the second part of their question, which was whether an assault is "simply having the gun out." Romero, however, forfeited any objection when his counsel specifically agreed with the trial court's response to the jury's questions. Additionally, even if he had not forfeited this objection, we would conclude the court's response was proper.

Second, Romero argues that the trial court erred by failing to sua sponte instruct the jury on brandishing as a lesser included offense of assault with a semiautomatic firearm. But the court was not required to instruct the

---

[1] Unless specified, further statutory references are to the Penal Code.

[2] CALCRIM No. 875 is titled, "Assault With Deadly Weapon or Force Likely to Produce Great Bodily Injury."

2

jury on brandishing because it is a lesser related offense and not a lesser included offense.  Also, there was no evidence of brandishing.

Finally, Romero asserts the prosecutor erred in making certain statements during closing argument because they referred to evidence not in the record.  Romero, however, forfeited his claim of error by failing to object to the remarks or request that the jury be admonished.  And even if he had not forfeited this argument, it lacks merit.

We affirm.

### FACTS AND PROCEDURAL BACKGROUND

In December 2022, Juan Alberto Solorzano was sitting in his car in a parking lot when Romero came from the back of his car and hit the driver's side door "hard."  It sounded like metal hitting metal.  Romero moved to the front of Solorzano's car and hit it two more times.  Romero yelled, "hey," took out a gun, and held it sideways as he pointed it directly at Solorzano for what felt like around a minute.  When he saw the gun, Solorzano lowered his head but he could still see Romero.  Romero stood there "as if he didn't want to move."  Although Romero did not make any verbal threat, he stared "intently" at Solorzano who felt that Romero was trying to intimidate him and acted "as if he wanted [Solorzano] to get out of the car."  Solorzano "was in panic" and was "very scared."  Solorzano did not know Romero.

While Romero stood at the front of Solorzano's car, a woman drove up and parked in a parking spot a few spaces away.  Romero stared at Solorzano, covered the gun with the sleeve of his sweater, smiled at Solorzano, then got into the back seat of the woman's car.  The woman also smiled and it appeared as though Romero and the woman found the incident "funny."  The female driver and Romero drove to another portion of the lot

3

and parked.  Solorzano called 911 right after the incident occurred, and officers responded five to 10 minutes later.

A responding officer spoke with a bystander and the conversation was captured on the officer's body worn camera.  The bystander said that he did not see what occurred, because he had arrived less than five minutes before the officer, and that Solorzano "was already on the phone" when he arrived. The bystander overheard Solorzano describing Romero's appearance to another officer and asked "is he talking about the guy with the tattoos on his forehead?"  When Solorzano said yes, the bystander said, "I parked right here.  I saw a guy with tattoos everywhere.  Walked in there looking very mad. . . .  I didn't see nothing but he walked through here.  And he looked like—you know a bad guy."  When the officer asked the bystander, "But you didn't actually witness the—," the bystander replied, "No.  I might've been lighting my cigar like right now and turned this way, so—if he did that, or he did it before I got here."

As the officers approached the car Romero had been in, they spotted someone matching Romero's description coming out of a store.  They asked if the car belonged to him, and a woman with him responded that it was her car.  Officers moved quickly to detain Romero.  He pulled away repeatedly as an officer tried to place handcuffs on him.  He was uncooperative, would not comply with officers, and refused to answer questions.  He repeatedly yelled at and swore at the officers.  Officers conducted a patdown search and found a handgun in a red satchel hanging across his body.  Officers also found a small plastic bindle in his pocket that tested positive for methamphetamine.

At trial, Romero claimed he was carrying a gun because he was a "gang dropout" from the San Ysidro gang and he needed it for his protection.  He explained that his girlfriend was driving them to a store, and they started to

pull into a parking spot, but a shopping cart blocked the spot. After she asked him to move the cart, he got out of the car and pushed the cart between two cars to give her space to pull in. He denied seeing anyone in a car, denied holding anything in his hands, denied hitting a car with his hand or gun, and denied pointing a gun at anyone. He claimed he got back inside the car right after he moved the cart. He was surprised when officers detained him and asked multiple times what was happening. He testified "there was a camera crew of plain-clothes guys filming the whole arrest" and claimed that he was not trying to resist arrest, but rather he did not want to be on camera.

On cross-examination, Romero admitted he knew he was not allowed to carry a gun, knew the gun was loaded, knew a round was in the chamber, and knew the gun was a semiautomatic. He also admitted he knew he possessed methamphetamine.

DISCUSSION

I.

*The Trial Court Appropriately Redirected The Jury To CALCRIM No. 875*

Romero contends that the trial court erred by referring the jury to CALCRIM No. 875 because the instruction only answered the first part of the jury's question, which was "what defines assault?" and did not answer the second part of the question, which was "is assault simply having the gun out?" We disagree.

A.    *Additional Procedural Background*

The trial court instructed the jury with CALCRIM No. 875 as follows:

> "The defendant is charged in Count 1 with assault with a semiautomatic firearm in violation of Penal Code section 245.
>
> "To prove that the defendant is guilty of this crime, the People must prove that:

5

"1.     The defendant did an act with a semiautomatic firearm that by its nature would directly and probably result in the application of force to a person;

"2.     The defendant did that act willfully;

"3.     When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;

"AND

"4.     When the defendant acted, he had the present ability to apply force with a semiautomatic firearm to a person.

"Someone commits an act *willfully* when he or she does it willingly or on purpose.  It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

"The terms *application of force* and *apply force* mean to touch in a harmful or offensive manner.  The slightest touching can be enough if it is done in a rude or angry way.  Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind.

"The touching can be done indirectly by causing an object to touch the other person.

"The People are not required to prove that the defendant actually touched someone.

"The People are not required to prove that the defendant actually intended to use force against someone when he acted.

"No one needs to actually have been injured by defendant's act. But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault.

6

"A *firearm* is any device designed to be used as a weapon, from which a projectile is discharged or expelled through a barrel by the force of an explosion or other form of combustion.

"A *semiautomatic pistol* extracts a fired cartridge and chambers a fresh cartridge with each single pull of the trigger."

During deliberations, the jury submitted the following questions to the court:

"What defines assault? under the law is assault simply having the gun out?"

After the parties conferred off the record, the court confirmed the following:

"[The Court:] . . . I've got counsel and Mr. Romero. Quote, new note: What defines assault. Under the law is assault simply having the gun out? We've had a discussion off record, which obviously we all agree that having a gun out is an assault, though there was some concern about whether or not that would be deemed to be a directed verdict. So we are just going to send them back to 875; is that correct?

"[The People]: Yes, Your Honor.

"[Defense counsel]: Yes. Thank you."

The jury was referred to CALCRIM No. 875. The trial court did not offer any further information.

B.  *Relevant Legal Principles*

"[T]he decision to provide further instructions in response to an inquiry is reviewed for an abuse of discretion." (*People v. Franklin* (2018) 21 Cal.App.5th 881, 887, fn. 4.) This standard of review applies "to any decision by a trial court to instruct, or not to instruct, in its exercise of its supervision over a deliberating jury." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1032, citing *People v. Waidla* (2000) 22 Cal.4th 690, 745-746; *People v. Lua* (2017) 10 Cal.App.5th 1004, 1016 (*Lua*); see also *People v. Beardslee* (1991) 53 Cal.3d 68, 97 (*Beardslee*) [a court has discretion "to determine what

7

additional explanations are sufficient to satisfy the jury's request for information"].)

To establish an abuse of discretion, Romero must show that the trial court's decision "was so erroneous that it 'falls outside the bounds of reason,' " or that it "exercised its discretion in an arbitrary, capricious, or patently absurd manner." (*People v. Johnson* (2022) 12 Cal.5th 544, 605; *In re Caden C.* (2021) 11 Cal.5th 614, 639.) "[T]he trial court does not abuse its discretion when it determines the best way to aid the jury is by directing the jury to reread the applicable jury instructions that 'are themselves full and complete.' " (*Lua, supra*, 10 Cal.App.5th at p. 1017.)

C.    *Analysis*

1.    *Romero Forfeited His Instructional Error Claim*

"Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Andrews* (1989) 49 Cal.3d 200, 218.) Here, Romero specifically agreed with the court's response to the jury. The court and the parties first discussed the matter off the record. When they came back on the record, the court explained that "we all agree" that "having a gun out is an assault." The court then confirmed that it would refer the jury back to CALCRIM No. 875 and both parties expressly assented.

As Romero acknowledges, when a defendant agrees with the trial court's response to a jury question during deliberations, any claim of error with respect to that response is forfeited. (*People v. Salazar* (2016) 63 Cal.4th 214, 248 ["We have held that counsel's affirmative agreement with the court's reply to a note from the jury forfeits a claim of error."]; *People v. Harris* (2008) 43 Cal.4th 1269, 1317 [defendant "waived" the claim by

8

agreeing to the court's handling of the jury question].) Because Romero did not give the trial court the opportunity to evaluate his argument, his claim of instructional error is forfeited. (See *People v. Orloff* (2016) 2 Cal.App.5th 947, 958 ["appellant 'did not object to or request amplification of the instructions provided and accordingly his claim that they were inadequate and misleading is forfeited on appeal' "].)

Although an exception to forfeiture exists where the substantial rights of the defendant are affected (§ 1259), the instruction here was correct and did not affect Romero's substantial rights. Similarly, in *People v. Kopp* (2019) 38 Cal.App.5th 47 (*Kopp*), the defendant argued the trial court erred in referring the jury to CALCRIM No. 875 in response to the jury's question after his trial counsel had expressly agreed to the response provided to the jury. (*Kopp*, at pp. 63, 65.) We found the trial court did not abuse its discretion in referring the jury to the standard instruction in response to its question about deadly weapons. There, like here, the defendant's substantial rights were not impacted because CALCRIM No. 875 correctly stated the law. (*Kopp*, at p. 68.)

> 2. *Romero's Claim of Instructional Error Would Have Failed*

Even if we were to address Romero's claim on the merits, we would conclude there was no error. The court properly exercised its discretion by responding to the jury's questions with a legally correct instruction and according to the parties' agreement.

Romero does not dispute that CALCRIM No. 875 is a correct statement of the law. (*Kopp, supra*, 38 Cal.App.5th at p. 68; *People v. Golde* (2008) 163 Cal.App.4th 101, 123 [CALCRIM No. 875 upheld].) The instruction "defines the crime of felony assault and explains the elements of that offense." (*People v. Flores* (2007) 157 Cal.App.4th 216, 220; see also *People v.*

9

*Garcia* (2022) 76 Cal.App.5th 887, 893 ["[t]he court instructed with CALCRIM No. 875 which defines the elements of assault with a deadly weapon"].) Because the instruction was full and complete, the trial court had discretion not to give any additional instruction so long as it considered how best to aid the jury before it responded. (*Lua, supra*, 10 Cal.App.5th at p. 1017.)

The trial court here discussed the jury's questions with counsel, considered how best to aid the jury and acted reasonably and appropriately. As to the second question, both counsel agreed with the court that having a gun out is an assault and that the correct course of action was to refer the jury back to CALCRIM No. 875. The record reflects the court considered the jury's question, consulted with counsel, and ultimately provided a legally correct response.

In *Kopp*, we similarly determined that CALCRIM No. 875 directly answered the jury's first question, "what constitutes a deadly weapon," and the trial court was within its discretion to refer the jury back to the instruction, which provided a specific answer to the question. (*Kopp, supra*, 38 Cal.App.5th at pp. 65, 67.) We also determined the jury's second question, "[s]pecifically does a fist or foot/shoe qualify?" was related to the first question and that CALCRIM No. 875 unambiguously answered it, as the instruction limits a "deadly weapon" to an "object, instrument or weapon," which does not encompass a fist or foot. (*Kopp,* at pp. 65, 67. )

Similarly, here, the jury's second question ("[u]nder the law[,] is assault simply having the gun out?") was a follow up to its first question ("[w]hat defines assault?"). The trial court's response of directing the jury to CALCRIM No. 875 was appropriate because it unambiguously answered the jury's question. (See *Beardslee, supra*, 53 Cal.3d at p. 97 [Although the

court's "primary duty" is to help jurors "understand the legal principles" they must apply, it "does not mean the court must always elaborate on the standard instructions."].) Specifically, CALCRIM No. 875 instructed the jury that the People were required to prove that "the defendant did an act with ( . . . a semiautomatic firearm . . . ) that by its nature would directly and probably result in the application of force to a person." (CALCRIM No. 875.) This language addressed whether simply "having the gun out" constituted assault. (*Beardslee, supra*, at p. 97 [noting that "comments diverging from the standard are often risky"].)[3]

## II.

### *Brandishing Is Not a Lesser Included Offense of Assault With a Semiautomatic Firearm*

Romero further contends that the trial court erred in not instructing the jury, sua sponte, on brandishing as a lesser included offense of assault with a semiautomatic firearm. We disagree.

A. *Relevant Legal Principles*

The trial court has a sua sponte obligation to instruct on a lesser included offense when there is substantial evidence from which a reasonable jury could conclude the defendant committed the lesser, but not the greater,

---

[3] Furthermore, because the jury found that Romero did more than merely "have the gun out," any error would have been harmless. (*Lua, supra*, 10 Cal.App.5th at p. 1017.) Specifically, the jury found true the personal use of a firearm allegation, which means it found that Romero either displayed the gun in a menacing manner, hit someone with the gun, or fired the gun. (CALCRIM No. 3146 [Personally Used Firearm].) For all these reasons, Romero's ineffective assistance of counsel claim argument also fails. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694 [to establish ineffective assistance of counsel, defendant must show counsel's performance was deficient and defendant was prejudiced as a result]; *People v. Ledesma* (1987) 43 Cal.3d 171, 217.)

11

offense.  (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).)  Two tests are used to determine whether an offense is a lesser included offense: the statutory elements test or the accusatory pleading test.  (*People v. Ramirez* (2009) 45 Cal.4th 980, 984–985; *People v. Licas* (2007) 41 Cal.4th 362, 366; *People v. Lopez* (1998) 19 Cal.4th 282, 288 (*Lopez*).)  The statutory elements test is satisfied when " 'all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense.' " (*Lopez,* at p. 288.)  Thus, "if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former."  (*Ibid.*; see *People v. Birks* (1998) 19 Cal.4th 108, 117.) Under the statutory elements test, the characterization of an offense as a lesser included offense is made solely with reference to the elements of that offense; "[t]he evidence actually introduced at trial is irrelevant . . . ." (*People v. Wright* (1996) 52 Cal.App.4th 203, 208; see also *People v. Escarcega* (1974) 43 Cal.App.3d 391, 396 (*Escarcega*).)  The accusatory pleading test is met " ' "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." ' " (*Lopez,* at pp. 288–289.)

The duty to instruct on a lesser included offense attaches only if the evidence would allow a reasonable jury to convict on the lesser included offense instead of the greater offense.  (*Breverman, supra*, 19 Cal.4th at p. 162.)  That is, the "trial court need not . . . instruct on lesser included offenses when the evidence shows that the defendant is either guilty of the crime charged or not guilty of any crime."  (*People v. Barton* (1995) 12 Cal.4th 186, 196, fn. 5.)

B.    *Brandishing Is Not a Lesser Included Offense*

Romero argues the issue was addressed by *People v. Wilson* (1967) 66 Cal.2d 749 and *People v. Coffey* (1967) 67 Cal.2d 204 (*Coffey*),[4] whose holdings have assertedly been ignored or contradicted by other courts, including *People v. Steele* (2000) 83 Cal.App.4th 212 (*Steele*).

In *Steele*, the appellate court rejected Steele's argument that brandishing a firearm in violation of section 417, subdivision (a)(2), was a lesser included offense of assault with a firearm, holding instead in accord with numerous authorities that brandishing under that section is a lesser related offense of assault with a firearm.  (*Steele, supra*, 83 Cal.App.4th at pp. 217–218 [citing cases].)  Relying on *Escarcega*, the court reasoned it is "theoretically possible to assault someone with a firearm without exhibiting the firearm in a rude, angry or threatening manner, e.g., firing or pointing it from concealment, or behind the victim's back." (*Steele, supra*, at pp. 217–218.)  *Steele* stated that the California Supreme Court had only implied in *People v. Wilson, supra*, 66 Cal.2d 749 that brandishing was a lesser included offense of assault, it did not directly so hold, and its statement had no prior case support and only scant subsequent support. (*Steele, supra*, at p. 219.)  Further, *Steele* observed that the court in *People v. Wilson* did not follow its own rule for analysis of lesser included offenses, which has continued unabated and was affirmed in *People v. Birks.*  (*Steele, supra*, at p. 221, citing *People v. Birks, supra*, 19 Cal.4th at p. 117.)

When we apply the statutory elements test in keeping with *People v. Birks, supra*, 19 Cal.4th 108, we can only conclude that brandishing cannot

---

[4]    The court in *Escarcega* examined *Coffey* and concluded its statement on the lesser included offense issue was dictum and without precedential value as it was not responsive to any issue raised and unnecessary to the decision. (*Escarcega, supra*, 43 Cal.App.3d at p. 400.)  We agree.

be a lesser included offense of assault with a semiautomatic firearm. Section 245, subdivision (b), punishes "[a]ny person who commits an assault upon the person of another with a semiautomatic firearm." "Assault is defined as 'an unlawful attempt, *coupled with a present ability*, to commit a violent injury on the person of another.' [Citation.] 'Once a defendant has attained the means and location to strike immediately he has the "present ability to injure." ' " (*People v. Licas, supra*, 41 Cal.4th at pp. 366–367.) The offense of brandishing a firearm is defined as exhibiting "any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner" in the "presence of any other person." (§ 417, subd. (a)(2).) Assault with a semiautomatic firearm does not require the defendant to display the weapon in a rude, angry, or threatening manner, as *Steele* points out. (*Steele, supra*, 83 Cal.App.4th at pp. 217–218.) Thus, under the statutory elements test, brandishing is not a lesser included offense of the crime of assault with a semiautomatic firearm.

Romero fares no better under the accusatory pleading test. The accusatory pleading here did not specify that the charged offense must necessarily occur by means of brandishing. (See also *Escarcega, supra*, 43 Cal.App.3d at p. 396 ["It is of no consequence that the *evidence* at trial might also establish guilt of another and lesser crime than that charged."].) The information did not allege that Romero drew or exhibited the gun in a rude, angry, or threatening manner, nor did it assert that he used the gun during a fight or quarrel. Instead, it states Romero "did unlawfully commit an assault upon [the victim] with a semi-automatic firearm."

C.    *Any Error Was Harmless*

Furthermore, even if we had concluded that brandishing a firearm is a lesser included offense of assault with a semiautomatic firearm, any error was harmless. In determining whether instructional error should result in

14

reversal, the applicable standard of review is whether Romero has demonstrated that it was "reasonably probable" that a result more favorable to him would have been reached in the absence of the alleged error. (*People v. Mendoza* (2000) 24 Cal.4th 130, 176–177 [applying standard of review under *People v. Watson* (1956) 46 Cal.2d 818].)

Romero's argument here is inconsistent with his defense that he never displayed the firearm. As discussed, he testified that he pushed the cart in between two cars to give his girlfriend space to pull into the parking spot. He denied seeing anyone in a car and denied holding anything in his hands, including a gun. Furthermore, defense counsel argued in closing that Romero never brandished a gun. Because there was no evidence to support brandishing, and the jury necessarily rejected his testimony, it was not reasonably probable the jurors would have returned a more favorable verdict. (*Breverman, supra*, 19 Cal.4th at p. 177 [where "the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is *comparatively* weak, . . . there is no reasonable probability the error of which the [appellant] complains affected the result"].) Accordingly, any instructional error was harmless. (*Mendoza, supra*, 24 Cal.4th at pp. 176–177.)

### III.

### *The Prosecutor Did Not Err In Closing Argument*

Romero claims the prosecutor erred when he referred to evidence that was not in the record during his closing argument. We disagree.

A. *Relevant Legal Principles*

A prosecutor violates the Federal Constitution when he or she engages in " ' "a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " (*People v.*

15

*Stanley* (2006) 39 Cal.4th 913, 951.) Under the state standard, misconduct occurs if the prosecutor uses "deceptive or reprehensible methods to attempt to persuade [the trier of fact]." (*Ibid.*)

"A prosecutor is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence. [Citation.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 726.) Although a defendant may "single[ ] out words and phrases, or at most a few sentences, to demonstrate misconduct," the reviewing court considers the prosecutor's statements "in the context of the argument as a whole." (*People v. Dennis* (1998) 17 Cal.4th 468, 522.)

When, as is the case here, the prosecutor is alleged to have engaged in misconduct during closing argument, the ultimate inquiry "is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Harrison* (2005) 35 Cal.4th 208, 244.) In performing this inquiry, the prosecutor's statements are examined in the context of the entire argument and the instructions given to the jury. (*People v. Morales* (2001) 25 Cal.4th 34, 44–46.) It is not lightly inferred that the jury drew the most, rather than the least, damaging meaning from the prosecutor's statements. (*People v. Shazier* (2014) 60 Cal.4th 109, 144.)

B.   *Analysis*

1.   *Romero Forfeited His Claim of Prosecutorial Error*

To preserve a claim of prosecutorial error, a "defendant must generally object 'in a timely fashion—and on the same ground,' and must 'request[ ] that the jury be admonished to disregard the impropriety.' " (*People v. Miranda-Guerrero* (2022) 14 Cal.5th 1, 29.) An exception to the rule of

16

forfeiture exists where an admonition would not have cured the harm caused by the alleged misconduct or when objecting would have been futile. (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)

In this case, as Romero acknowledges, he did not object to the complained-of remarks and did not request that the jury be admonished. There is no reason to believe that an objection to any of the prosecutor's comments would have been futile or an admonition would not have cured any resulting prejudice. Had Romero objected to the comments he now asserts constituted prejudicial misconduct, a further record could have been developed for this court's review. At that point, if appropriate, Romero could have requested an admonition for the jury to disregard the prosecutor's comments and follow the trial court's instructions. Absent any objection, Romero has forfeited the claim of prosecutorial error.

While we do have the discretion to excuse forfeiture, such discretion is to be exercised sparingly. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Moreover, the forfeiture requirement serves an important purpose. Defendants must raise a prosecutorial error claim during trial, where it can be remedied at once in a far more efficient and effective manner than on appeal. (See *People v. Peoples* (2016) 62 Cal.4th 718, 801 [reason for the forfeiture rule is that the trial court should be given the opportunity to correct the misconduct of counsel and thus, if possible, prevent the harmful effect on the minds of the jurors].) We decline to exercise our discretion to excuse Romero's failure to object because as we set forth below, he has failed to show prejudice from the prosecutor's statements. Therefore, even if he had objected, it is not reasonably probable he would have received a different result. (*People v Davis* (2009) 46 Cal.4th 539, 612 [setting forth the standard of review].)

### 2. *The Prosecutor Did Not Misstate The Facts*

Even if Romero had not forfeited his claim, we would conclude the prosecutor did not err during closing argument.

Romero contends the prosecutor misstated the evidence when he referenced the statements made by the bystander at the scene. Specifically, he focuses on the fact that the prosecutor urged during closing argument that the bystander recalled that Solorzano was on the phone "with 911," but he argues the evidence establishes that he may have been on the phone with someone else or watching videos on his phone. He further argues the bystander never specifically said he was not there when the incident occurred, despite the prosecutor's comment during rebuttal. Romero's claims fail because the prosecutor correctly referred to the witness's statements and argued the reasonable inferences therefrom.

Although the bystander did not testify, his statements were recorded by the officer's body worn camera. He stated multiple times he did not see what occurred and that he arrived "less than five minutes" before the officers arrived. However, he saw Solorzano and said, "I saw him—when I got here, he was already on the phone." When an officer asked if he witnessed anything, the bystander said, "No. I might've been lighting my cigar like right now and turned this way . . . if he did that, or he did it before I got here."

During closing argument, the prosecutor discussed the statements made by the bystander. The prosecutor said,

> "He wasn't there for whatever the assault was. He told you, "I wasn't paying attention," or he told the video. "Might have been lighting a cigar. Wasn't necessarily paying attention.
>
> "He's facing this way, towards you, if you were at the front of his car. And the assault happened that way. He wasn't in a position

18

to see it.  He told them he got there after the fact.  Actually, he said, "When I got here he," the victim, Mr. Solorzano, "was already on his phone with 911" necessarily after the fact, after the assault.

"So does his statements in that video change Mr. Solorzano's story.  Does it undermine it.  Does it prove or disprove anything, no.  All it proves is he was there after the fact, he kept interjecting, "Oh, that guy's got a gun, I got to get out of here," but he didn't see the actual assault.  And he wouldn't have from his position unless he were just sitting there looking in his side view mirror for some reason."

The bystander's statements corroborated Solorzano's testimony that the incident occurred five to 10 minutes before the police arrived.  During rebuttal, the prosecutor argued,

"You're just being asked to speculate [the bystander] must have heard it if that was happening, if he was even there when this occurs, which he told you he wasn't.

"He said (as read), "I didn't actually witness anything.  I might have turned away.  I was lighting a cigar."  Again, he wouldn't have been looking in the direction of the assault."

The prosecutor was within his "wide-ranging right" to argue that the bystander was not likely there at the time of the incident and, if he was, he did not see anything because his body was turned away from Solorzano's car. See *People v. Tully* (2012) 54 Cal.4th 952, 1043 [" 'the prosecutor has a wide-ranging right to discuss the case in closing argument,' " including " 'the right to fully state his views as to what the evidence shows and to urge whatever conclusions he deems proper' "].)  Similarly, the prosecutor's use of the phrase "turned away" even though the bystander said "turned this way" was a reasonable inference from the bystander's comment explaining the direction in which he would have been looking as he lit a cigar.  (*Ibid.* [a defendant

19

"may not complain on appeal if the reasoning is faulty or the deductions are illogical because these are matters for the jury to determine"].)  In short, the prosecutor permissibly argued proper inferences from the evidence.

### 3. *Romero Fails To Show Ineffective Assistance of Counsel*

Romero alternatively argues his trial counsel rendered constitutionally ineffective assistance by failing to object.  "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.' " (*People v. Centeno, supra*, 60 Cal.4th at p. 667.)

As discussed above, the prosecutor's remarks were not objectionable, therefore, there was no duty to object.  (See *People v. Riel* (2000) 22 Cal.4th 1153, 1202 [defendant "cannot automatically obtain merit review of a noncognizable issue by talismanically asserting ineffective assistance of counsel"]; see also *People v. Memro* (1995) 11 Cal.4th 786, 834 [defense counsel has no duty to make futile or frivolous objections].)  Because the prosecutor did not err during closing argument, no prejudice resulted from counsel's failure to object.  (*Strickland v. Washington, supra*, 466 U.S. at p. 697 ["[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"].)

### IV.

### *There Was No Cumulative Error*

Romero's final argument is that the cumulative effect of the errors resulted in prejudice, requiring reversal.  We disagree.  "[A] series of trial errors, though independently harmless, may in some circumstances rise

by accretion to the level of reversible and prejudicial error." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)  Because we found no errors, there can be no prejudicial cumulative impact.

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:


BUCHANAN, J.


CASTILLO, J.